## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-cv-60803-WPD

K.MIZRA LLC,

     Plaintiff,

v.

CITRIX SYSTEMS, INC., and
CLOUD SOFTWARE GROUP, INC.,

     Defendants.

_____/

### DECLARATION OF BRIAN S. BOERMAN IN SUPPORT OF
### PLAINTIFF K.MIZRA LLC'S BRIEF IN OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS (ECF NO. 19)

I, Brian S. Boerman, declare as follows:

1.     I am over the age of 18. I have personal knowledge of the facts set forth below and, if called upon to do so, could and would competently testify thereto.

2.     I am a shareholder at Sheridan Ross P.C. and co-counsel for Plaintiff K.Mizra LLC ("K.Mizra"). I am familiar with the matters set forth in this Declaration, and make this Declaration in support of K.Mizra's Brief in Opposition to Defendants' Motion to Dismiss (ECF No. 19), filed herewith. The Brief in Opposition responds to the Motion to Dismiss (ECF No. 19, the "Motion") filed by Defendants Citrix Systems, Inc. and Cloud Software Group, Inc. (collectively, "Citrix").

3.     Exhibit 02 to the Motion (ECF No. 19-2) is a redacted copy of a Motion for Partial Summary Judgment filed by K.Mizra in *K.Mizra LLC v. Hewlett Packard Enterprise Company*, No. 2:21-cv-00305-JRG, in the United States District Court for the Eastern District of Texas.

4.     In response to the motion for partial summary judgment attached as Exhibit 02 to the Motion, Defendants Hewlett Packard Enterprise Company and Aruba Networks withdrew their

defense of invalidity under 35 U.S.C. § 101. A true and correct copy of the Joint Motion and Stipulation in which Defendants agreed to withdraw their affirmative defenses and counterclaims asserting that the claims of the Patents-in-Suit were invalid under 35 U.S.C. § 101 is attached as Exhibit A.

5.      In *K.Mizra LLC v. Cisco Systems, Inc.*, No. 6:20-cv-01031-ADA, filed in the United States District Court for the Western District of Texas, Defendant Cisco Systems, Inc. ("Cisco") asserted as an affirmative defense a claim that U.S. Patent No. 8,234,705 ("the '705 Patent") was invalid under 35 U.S.C. § 101.

6.      In the *Cisco* case, K.Mizra filed a motion for summary judgment asking the Court to deny Cisco's patent eligibility defenses as a matter of law. A true and correct copy of the public version of K.Mizra's sealed summary judgment motion is attached as Exhibit B.

7.      The Court in the *Cisco* case granted K.Mizra's summary judgment motion as to Cisco's patent eligibility defense. A true and correct copy of the Order from the Court granting K.Mizra's summary judgment motion is attached as Exhibit C.

8.      Based on a review of court records through LexMachina, I have identified eleven prior cases where the '705 Patent was asserted by K.Mizra or a prior owner:

- *Network Security Technologies, LLC v. Pulse Secure, LLC*, No. 1:17-cv-01490 (D. Del.)
- *Network Security Technologies, LLC v. Bradford Networks, Inc.*, No. 1:17-cv-01487 (D. Del.)
- *Network Security Technologies, LLC v. McAfee, Inc.*, No. 1:17-cv-01489 (D. Del.)
- *Network Security Technologies, LLC v. ForeScout Technologies, Inc.*, No. 1:17-cv-01488 (D. Del.)
- *K.Mizra LLC v. Cisco Systems, Inc.*, No. 6:20-cv-01031 (W.D. Tex.)
- *K.Mizra LLC v. CA, Inc.*, No. 2:21-cv-00247 (E.D. Tex.)
- *K.Mizra LLC v. Fortinet, Inc.*, No. 2:21-cv-00249 (E.D. Tex.)

- *K.Mizra LLC v. Forescout Technologies, Inc.*, No. 2:21-cv-00248 (E.D. Tex.)
- *K.Mizra LLC v. Hewlett Packard Enterprise Company*, No. 2:21-cv-00305 (E.D. Tex.)
- *K.Mizra LLC v. SonicWall Inc.*, No. 1:25-cv-00047 (D. Del.)
- *K.Mizra LLC v. Google LLC*, No. 1:25-cv-00236 (W.D. Tex.)

9.     Based on a review of the court records for these eleven prior cases on LexMachina, I have not identified any previous case where a party challenging the validity of the '705 Patent filed a motion to dismiss or a motion for summary judgment on a patent ineligibility defense under 35 U.S.C. § 101.

10.     Attached as Exhibit D is a true and correct screenshot of the webpage available at https://www.hhs.gov/answers/public-health-and-safety/what-is-the-difference-between-isolation-and-quarantine/index.html.

11.     Attached as Exhibit E is a true and correct copy of the Notice of Allowance for the '705 Patent.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 24th day of June, 2025.

Respectfully submitted,

/s/ Brian S. Boerman
Brian S. Boerman*
CO State Bar No. 50834
bboerman@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
litigation@sheridanross.com

*Admitted pro hac vice

Counsel for Plaintiff K.Mizra LLC

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| K.MIZRA LLC,<br><br>        Plaintiff,<br><br>            v.<br><br>HEWLETT PACKARD ENTERPRISE<br>COMPANY and ARUBA NETWORKS,<br>LLC,<br><br>        Defendants. | Civil Action No. 2:21-cv-305-JRG<br><br>**JURY TRIAL DEMANDED** |

## JOINT MOTION AND STIPULATION REGARDING DEFENDANTS' SECTION 101 DEFENSE AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' SECTION 101 DEFENSE (DKT. NO. 194)

Plaintiff K.Mizra, LLC ("Plaintiff") and Defendants Hewlett Packard Enterprise Company and Aruba Networks, LLC (together, "Defendants") (collectively, "the Parties") through their respective counsel, stipulate as follows:

Defendants stipulate and agree to withdraw the portions of their Fourth Affirmative Defense and Second and Fourth Counterclaims asserting that claims of the Patents-in-Suit are invalid under 35 U.S.C. § 101 (Dkt. No. 105 at 30, 68-69, and 70).

Plaintiff stipulates and agrees to withdraw its Motion for Partial Summary Judgment on Defendants' 35 U.S.C. § 101 Defense (Dkt. No. 194).

For the foregoing reasons, the Parties respectfully request the Court enter the attached order withdrawing Defendants defenses and counterclaims under 35 U.S.C. § 101 and Plaintiff's Motion for Partial Summary Judgment on Defendants' 35 U.S.C. § 101 Defense (Dkt. No. 194).

Dated: March 21, 2024

By: */s/ Bart A. Starr (w/ permission)*　　　　　*/s/ Joshua R. Thane*

Claire Abernathy Henry　　　　　　　　Jennifer H. Doan
Texas Bar No. 24053063　　　　　　　　Texas Bar No. 08809050
Andrea Leigh Fair　　　　　　　　　　Joshua R. Thane
Texas Bar No. 24078488　　　　　　　　Texas Bar No. 24060713
Charles Everingham IV　　　　　　　　HALTOM & DOAN
Texas Bar No. 00787447　　　　　　　　6500 Summerhill Road, Suite 100
WARD, SMITH, & HILL, PLLC　　　　　Texarkana, TX 75503
1507 Bill Owens Parkway　　　　　　　Tel: (903) 255-1000
Longview, TX 75604　　　　　　　　　jdoan@haltomdoan.com
Telephone: (903) 757-6400　　　　　　jthane@haltomdoan.com
Email: claire@wsfirm.com
　　　　andrea@wsfirm.com　　　　　　Manish K. Mehta (admitted *pro hac vice*)
　　　　ce@wsfirm.com　　　　　　　　Kal K. Shah
　　　　　　　　　　　　　　　　　　Cristina Q. Almendarez
Robert R. Brunelli (Lead Counsel)　　　Kate Watson Moss (admitted *pro hac vice*)
CO State Bar No. 20070　　　　　　　Louis Constantinou (admitted *pro hac vice*)
　　rbrunelli@sheridanross.com　　　　BENESCH FRIEDLANDER COPLAN
Paul Sung Cha*　　　　　　　　　　　& ARONOFF LLP
CO State Bar No. 34811　　　　　　　71 South Wacker Drive, Suite 1600
　　pscha@sheridanross.com　　　　　Chicago, IL 60606 4637
Bart A. Starr　　　　　　　　　　　　Tel: (312) 212-4949
CO State Bar No. 50446　　　　　　　mmehta@beneschlaw.com
　　bstarr@sheridanross.com　　　　　kshah@beneschlaw.com
Angela J. Bubis*　　　　　　　　　　calmendarez@beneschlaw.com
CO State Bar No. 58144　　　　　　　kwatsonmoss@beneschlaw.com
　　abubis@sheridanross.com　　　　　lconstantinou@beneschlaw.com
Briana D. Long*
CO State Bar No. 57914　　　　　　　Michael S. Weinstein
　　blong@sheridanross.com　　　　　(admitted *pro hac vice*)
SHERIDAN ROSS P.C.　　　　　　　　BENESCH FRIEDLANDER COPLAN &
1560 Broadway, Suite 1200　　　　　　ARONOFF LLP
Denver, Colorado 80202-5141　　　　　127 Public Square, Suite 4900
Tel: (303) 863-9700　　　　　　　　　Cleveland, OH 44114
E-mail: litigation@sheridanross.com　　Tel: (216) 363-4500
　　　　　　　　　　　　　　　　　　mweinstein@beneschlaw.com\

*Admitted pro hac vice*
*Attorneys for Plaintiff K.Mizra LLC*　　Ziyong Sean Li
　　　　　　　　　　　　　　　　　　BENESCH FRIEDLANDER COPLAN
　　　　　　　　　　　　　　　　　　 & ARONOFF LLP
　　　　　　　　　　　　　　　　　　100 Pine Street, Suite 3100
　　　　　　　　　　　　　　　　　　San Francisco, CA 94111
　　　　　　　　　　　　　　　　　　Tel: (628) 600-2250
　　　　　　　　　　　　　　　　　　sli@beneschlaw.com

Brent K. Yamashita
DLA PIPER LLP (US)
3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Tel: (650) 833-2000
Fax: (650) 833-2001
brent.yamashita@us.dlapiper.com

Sean C. Cunningham (admitted *pro hac vice*)
Erin P. Gibson (admitted *pro hac vice*)
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: (858) 677-1400
Fax: (858) 677-1401
sean.cunningham@dlapiper.com
erin.gibson@dlapiper.com

Helena D. Kiepura (admitted *pro hac vice*)
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4333
Fax: (202) 799-5300
helena.kiepura@us.dlapiper.com

*Attorneys for Defendants*
*Hewlett Packard Enterprise Company and*
*Aruba Networks, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on this the 21st day of March 2024.

*/s/ Joshua R. Thane*
Joshua R. Thane

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned certifies counsel complied with the meet and confer requirement. On March 20, 2024, counsel for Defendants conferred with counsel for Plaintiff. The Parties jointly submit the relief requested.

*/s/Joshua R. Thane*
Joshua R. Thane

**JOINT MOTION AND STIPULATION REGARDING SECTION 101 DEFENSE** – Page 3

# EXHIBIT B

# PUBLIC VERSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| K.MIZRA LLC, | Civil Action No.: 6:20-cv-01031-ADA |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| CISCO SYSTEMS, INC., | ██████████████ |
| Defendant. | |

## PLAINTIFF K.MIZRA LLC'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT CISCO SYSTEMS, INC.'S DEFENSES BASED ON PRIOR ART AND PATENT ELIGIBILITY

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................... 2

      A.    Cisco's Prior Art Defenses.................................................................... 2

            1.    Cisco's Asserted Prior Art and Documentation............................. 2

            2.    The NAC White Paper and INAC|POCD are Printed Publications............ 4

            3.    NAC is Coextensive with Gleichauf.............................................. 5

            4.    Cisco's Unsuccessful IPR .............................................................. 6

            5.    Summary of Cisco's Prior Art Defenses........................................ 9

      B.    Cisco's Section 101 Defense ............................................................... 10

III.  LEGAL STANDARD FOR SUMMARY JUDGMENT................................ 11

IV.   ARGUMENT ................................................................................................. 12

      A.    Cisco Cannot Prove Invalidity Based on Prior Art............................. 12

            1.    Cisco is Estopped from Relying on its Prior Art Combinations
                  Because it Could Have Raised Its NAC Arguments at the PTAB............ 12

                  a.    IPR estoppel applies to patents, printed publications,
                        and products described in printed publications............................. 12

                  b.    All relevant aspects of NAC are disclosed in Cisco's
                        own printed publications.............................................................. 15

                  c.    All relevant aspects of NAC were previously presented
                        to the PTAB via Gleichauf............................................................ 18

            2.    Cisco Cannot Prove Invalidity by Clear and Convincing Evidence ......... 18

      B.    Cisco Cannot Prove Patent Ineligibility.............................................. 19

V.    CONCLUSION............................................................................................... 22

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
  908 F.3d 765 (Fed. Cir. 2018) ................................................. 16

*Actifio, Inc. v. Delphix Corp.*,
  No. IPR2015-00052,
  2016 WL 1393513 (P.T.A.B. Mar. 31, 2016) ........................................ 17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ................................................. 19, 20, 21, 22

*Altamont Software, Inc. v. Sorna Corp.*,
  No. IPR2019-00218,
  2020 WL 2486722 (P.T.A.B. May 13, 2020) ........................................ 16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................. 11

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000) ................................................. 22

*BASCOM Glob. Internet Servs., Inc. v. AT & T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ................................................. 21

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................. 20

*Biscotti Inc. v. Microsoft Corp.*,
  No. 2:13-CV-01015-JRG-RSP,
  2017 WL 2526231 (E.D. Tex. May 11, 2017) ........................................ 13

*Boston Scientific Corp. v. Cook Group Inc.*,
  No. 1:17-cv-03448-JRS-MJD,
  2023 WL 1452172 (S.D. Ill. Jan. 31, 2023) ................................... 16, 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................. 11

*Cisco Sys., Inc. v. K.Mizra LLC*,
  No. IPR2021-00593,
  2022 WL 4346104 (P.T.A.B. Sept. 19, 2022) ........................................ 7

*CliniComp Int'l, Inc. v. Athenahealth, Inc.*,
  No. A-18-CV-00425-LY,
  2020 WL 7011768 (W.D. Tex. Oct. 28, 2020) ............................... 14, 15, 17

*Duffy v. Leading Edge Prods.*,
  44 F.3d 308 (5th Cir. 1995) ................................................. 12

*DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*,
  No. CV H-20-2123,
  2022 WL 4350264 (S.D. Tex. Sept. 19, 2022) ........................................ 19

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  365 F.3d 1054 (Fed. Cir. 2004) .................................................................................. 19

*GREE, Inc. v. Supercell Oy*,
  No. 2:19-CV-00071-JRG-RSP,
  2019 WL 5677511 (E.D. Tex. Oct. 30, 2019) ........................................................... 13

*Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*,
  669 F.2d 1026 (5th Cir. 1982) ................................................................................... 12

*In re Klopfenstein*,
  380 F.3d 1345 (Fed. Cir. 2004) .................................................................................. 16

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
  No. 2:17-CV-0661-JRG-RSP,
  2019 WL 7580245 (E.D. Tex. May 2, 2019) .............................................................. 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................ 11, 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) ..................................................................................................... 20

*Mobile Equity Corp. v. Walmart Inc.*,
  No. 2:21-cv-00126-JRG-RSP,
  2022 WL 4587492 (E.D. Tex. Sept. 27, 2022) .......................................................... 20

*Mobile Equity Corp. v. Walmart Inc.*,
  No. 2:21-cv-00126-JRG-RSP,
  2022 WL 4587565 (E.D. Tex. Sept. 8, 2022) ............................................................. 20

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
  404 F. Supp. 3d 1021 (E.D. Tex. 2019) ..................................................................... 21

*Procter & Gamble Co. v. Team Techs., Inc.*,
  Case No. 1:12-cv-552,
  2014 WL 12656554 (S.D. Ohio July 3, 2014) ........................................................... 19

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
  929 F.3d 1363 (Fed. Cir. 2019) .................................................................................. 16

*Sciele Pharma Inc. v. Lupin Ltd.*,
  684 F.3d 1253 (Fed. Cir. 2012) .................................................................................. 19

*Scott v. Harris*,
  550 U.S. 372 (2007) ................................................................................................... 12

*Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*,
  No. W-19-CV-00257-ADA,
  2020 WL 278481 (W.D. Tex. Jan. 10, 2020) ............................................................. 20

*Tolan v. Cotton*,
  572 U.S. 650 (2014) ................................................................................................... 11

*Wasica Finance GmbH v. Schrader Int'l, Inc.*,
  432 F. Supp. 3d 448 (D. Del. 2020) ................................................................. 14, 15, 17

**Statutes**

35 U.S.C. § 311 ................................................................................................................ 13

35 U.S.C. § 315 ................................................................................................ 12, 14, 17

**Rules**

Fed. R. Civ. P. 56 .......................................................................................................... 11, 12

iv

# I.    __INTRODUCTION__

Pursuant to Fed. R. Civ. P. 56, Plaintiff K.Mizra LLC ("K.Mizra") moves for summary judgment on Defendant Cisco Systems, Inc.'s ("Cisco") defenses of anticipation and obviousness ("prior art defenses") of asserted claims in U.S. Patent No. 8,234,705 ("the '705 Patent"). Cisco's prior art defenses rely entirely on prior art that either was presented or reasonably could have been presented to the U.S. Patent & Trademark Office Patent Trial & Appeals Board ("PTAB") in Cisco's unsuccessful *inter partes* review ("IPR") proceeding against the '705 Patent. Under binding statutory law, Cisco is estopped from relying on any such art in any district court proceeding to challenge validity of the '705 Patent. Because all the prior art defenses raised in Cisco's expert report are barred by estoppel, Cisco cannot prove anticipation or obvious as a matter of law. Summary judgement on Cisco's prior art defenses is thus warranted.

Separately, the Court should grant summary judgment on Cisco's prior art defenses because they are no more substantive than the theories the PTAB rejected in the IPR under a lower burden of proof. The only difference between Cisco's prior art defenses in this case and the grounds for its failed IPR is the addition of a prior art system that was not formally raised in the IPR. However, that prior art system is fully disclosed in a Cisco patent that the PTAB did consider and rejected in holding that all challenged claims of the '705 Patent are valid. Cisco cannot prove by clear and convincing evidence a defense they could not prove by a preponderance of the evidence, again meaning summary judgement is appropriate.

The Court should also enter summary judgment on Cisco's defense of patent ineligibility under 35 U.S.C. § 101 ("Section 101"). The entirety of Cisco's evidence on this point consists of a few paragraphs of cursory statements by its expert, and such evidence fails as a matter of law to prove by clear and convincing evidence invalidity under Section 101.

Ex. B, p. 6

## II.    STATEMENT OF FACTS

### A.    Cisco's Prior Art Defenses

#### 1.    Cisco's Asserted Prior Art and Documentation

K.Mizra asserts that Cisco infringes and has infringed claims 1, 9, 12, 16 and 19 of the '705 Patent. Cisco served "Preliminary Invalidity Contentions" on April 2, 2021 identifying "Cisco's Network Admission Control product, released June 21, 2004 and/or (alone or together) Cisco Network Admission Control White Paper © 1992-2004 ("NAC"), alone or in combination with Gleichauf and Ovadia" as a prior art basis for invalidity. (Ex. A at 4.) Cisco's Preliminary Invalidity Contentions included a claim chart purporting to set forth "specific examples of features of the Cisco Network Admission Control product, released June 21, 2004 ("NAC"), that anticipate the elements of asserted Claims 1-3, 5-7, 9-13, and 15-19" of the '705 Patent. (Ex. B at 2.) No assertion of invalidity based on obviousness was there presented, and the only documentation Cisco cited for NAC in that claim chart was the NAC White Paper. (*Id.*) Twenty days later, Cisco served a "Revised" Exhibit A-4 adding citations to INAC|POCD. (Ex. C.) Cisco's email stated that INAC|POCD was "published no later than August 9, 2004," thus admitting it too was a printed publication. (Ex. D at 1.) Cisco did not during the fact discovery period serve invalidity contentions citing source code to support its theory that NAC anticipates any claim of the '705 Patent or that the claims were rendered obvious by some combination of these references.

Cisco then served the Opening Expert Report of Paul Clark, setting forth Cisco's invalidity theories to be presented at trial. (Ex. E.) Dr. Clark's report alleges that the asserted claims of the '705 Patent are invalid on the following prior-art-based grounds:

- Cisco's Network Admission Control product ("NAC");

2

- NAC alone or in combination with U.S. Patent No. 9,436,820 ("Gleichauf")[1]; and

- NAC alone or in combination with Gleichauf and/or U.S. Patent 7,533,407 ("Lewis") and/or U.S. Patent No. 7,747,862 ("Ovadia").

(*Id.* at 6.)

The documentation for NAC relied upon in Dr. Clark's report consists solely of "references to source code . . ., product literature titled 'Cisco Network Admission Control White Paper © 1992-2004' ('NAC [White Paper]'), . . . and 'Implementing Network Admission Control | Phase One Configuration and Deployment,' ('INAC|POCD')." (Ex. I at 3.) Dr. Clark cites Cisco's source code only for two claim elements (element 1[d] and element 1[e]). (*Id.* at 17, 21.) For each of these elements, Cisco's source code citations consist entirely of eight lines of text setting forth not any actual source code, but rather identifications of specific source code files. Dr. Clark provides no narrative description of the referenced source code/files or any explanation as to how the referenced source code/files is relevant to the corresponding claim elements. In deposition, Dr. Clark admitted that the source code citations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (Ex. J. at 85:8-12.[2]) When asked why he included the source code citations, Dr. Clark said that "it provided additional evidence of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ specifically ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 86:3-10.) Critically, Dr. Clark admitted that this specific information is also described in Cisco's written publications (*Id.* at 86:11-17), such as the

---

[1] Following service of expert reports and after Dr. Clark's deposition, Cisco informed K.Mizra that it was withdrawing the Gleichauf reference. But whether Gleichauf is asserted in this action has no bearing on the relief requested herein.

[2] Citations to the Rough Transcript of Dr. Clark's deposition reference internal pagination.

NAC White Paper and INAC|POCD that Dr. Clark relies upon to also show these elements. (*Id.* at 14-18.)

### 2.      The NAC White Paper and INAC|POCD are Printed Publications

Cisco identified the NAC White Paper on a list of "Prior Art Patents and Printed Publications" in its Preliminary Invalidity Contentions. (Ex. A at 9.) The NAC White Paper is thus a "printed publication" by Cisco's own admission.

Cisco provided no information concerning INAC|POCD in discovery, nor does Dr. Clark provide any context for what the INAC|POCD is or purports to be. However, Cisco produced INAC|POCD as a public document (*i.e.*, without a confidentiality designation), and described it as having been "published" as noted above. The "Purpose" of the document is described as follows:

> This document provides guidance for implementing Network Admission Control (NAC), an industry-wide collaboration sponsored by Cisco Systems. It describes deployment considerations and configuration procedures for Cisco IOS software devices acting as Network Access Devices (NADs). It provides installation guidelines for the Cisco Trust Agent (CTA) on Microsoft Windows client machines. It also provides configuration instructions for Cisco Secure ACS, including configuration with anti-virus software products.

(Ex. K at iii.) The "Intended Audience" of the document is described as follows:

> The audience for this document consists of system engineers and network administrators responsible for the implementation of NAC. This document assumes you are familiar with Microsoft Windows operating systems and client machines and with the configuration and operation of Cisco Secure Cisco Secure ACS. It also assumes you know how to configure Cisco IOS devices, and are familiar with certificate authorities and the trust models provided by digital certificates.

(*Id.*) In other words, INAC|POCD is a manual for the installation and use of NAC, and its intended audience is system engineers and network administrators at companies using NAC.

### 3. NAC is Coextensive with Gleichauf

According to Cisco, "Gleichauf is a Cisco patent that issued from the work that led to the NAC product." (Ex. B at 3.) Dany Rochefort (Cisco's representative, employee, and witness) testified that ███████████████████████████████████████████████████████████ ████ For example, Mr. Rochefort referred to Gleichauf as ███████████ (Ex. L at 66:4-67:14.) The relationship and correlation between Gleichauf and NAC is confirmed in the specification of Gleichauf itself, which states:

> The features of the invention [of Gleichauf] may be employed in data communications devices and other computerized devices and software systems for such devices as those manufactured by Cisco Systems, Inc. of San Jose, Calif.

(Ex. M at 7:14-18.)

Indeed, Dr. Clark asserted in his report that ██████████████████████ ████████ (Ex. E ¶ 123 (emphasis added).) Unsurprisingly, then, Dr. Clark's claim chart for NAC (Exhibit D-4 to his report) is largely redundant of his claim chart for Gleichauf (Exhibit D-1 to his report). For element 1[a], Dr. Clark identifies "posture credentials" in Gleichauf and ███ ████████████████████████████ in NAC. (Ex. F at 5-6; Ex. I at 6.) For the "trusted computing base" of element 1[b], Dr. Clark identifies a "Posture Agent" that communicates with a "posture plug-in API" in Gleichauf. (Ex. F at 8.) In NAC, Dr. Clark identifies a ████████ ████████████████████████████████████ (Ex. I at 9.) As to the claimed "response" in element 1[c], Dr. Clark identifies the "posture response" and "posture credentials" in Gleichauf and ████████████████████ in NAC. (Ex. F at 10; Ex. I at 12.) Next, Dr. Clark relies on "protocols such as the Extensible Authentication Protocol (EAP), Protected Extensible Authentication Protocol (PEAP) and Flexible EAP Authentication using Secure Tunnel Protocol (EAP-FAST)" for element 1[d] in Gleichauf, and likewise cites ████ in

5

NAC for this element. (Ex. F at 13; Ex. I at 15-16.) For the "digitally signed attestation of cleanliness" of element 1[e], Dr. Clark relies on information provided in the "posture credentials" in Gleichauf and again cites the corresponding ███████████████████████ in NAC. (Ex. F at 13-14; Ex. I at 20.)

For the "quarantining" limitation of element 1[f], Dr. Clark again discusses responses to "posture" information for Gleichauf, including placing devices on "an isolated, or 'quarantine' network segment." (Ex. F at 15.) In his NAC chart, Dr. Clark likewise cites ████████ ██████████████████████ (Ex. I at 21-24.) Dr. Clark then asserts that the "service request" of element 1[g] corresponds to an "access request" in Gleichauf and a ██████████ ████████████ in NAC. (Ex. F at 16; Ex. I at 25.) For the "quarantine notification page" and "quarantine server" of elements 1[h]-[i], Dr. Clark cites a URL redirect to a "remediation server" in Gleichauf and ████████████████████ in NAC. (Ex. F at 17-20; Ex. I at 26, 29.) Finally, for element 1[j], Dr. Clark cites similar disclosures of ███████████████████ in both Gleichauf and NAC. (Ex. F at 21; Ex. I at 30-33.) Dr. Clark's charts for the remaining asserted claims also have close correspondence between the alleged disclosures of Gleichauf and NAC.

In short, the Gleichauf "NAC patent" uses slightly different terminology from the NAC printed publications Dr. Clark cites for NAC itself, but the scope of disclosure is the same. Gleichauf discloses no less concerning NAC than the NAC White paper, INAC|POCD or Cisco's source code.

### 4. Cisco's Unsuccessful IPR

Cisco filed a petition for IPR of claims 1-3, 5-13 and 15-19 of the '705 Patent (*i.e.*, all claims originally asserted in this action) based on Gleichauf in view of Lewis and Ovadia. *Cisco Sys., Inc. v. K.Mizra LLC*, No. IPR2021-00593, 2022 WL 4346104, at *1 (P.T.A.B. Sept. 19,

6

2022). On September 19, 2022, the PTAB issued a Final Written Decision ("FWD") holding Cisco had failed to show by a preponderance of the evidence that any of the challenged claims were unpatentable. *Id.* at *16.

Regarding independent claims 1, 12 and 19, Cisco in its IPR relied on the combination of Gleichauf, Lewis and Ovadia to argue that those claims are invalid as obvious. *Id.* at *9, *16. Cisco did not assert that Gleichauf disclosed the limitations reciting "trusted platform module," instead relying on Ovadia, and the limitations relating to the operation of the recited "quarantine server," instead relying on Lewis. *Id.* at *9. The PTAB held, however, that "Gleichauf alone provides all of the alleged benefits or advantages of the proposed combination of Gleichauf and Lewis," and that Cisco had failed to "explain[] adequately why a person of ordinary skill in the art [POSITA] would have been motivated to look to Lewis to introduce such significant changes to the architecture or design of Gleichauf's network when Gleichauf alone already provides all of the alleged benefits or advantages of the proposed combination identified by" Cisco. *Id.* at *14-*15. The PTAB thus found that Cisco had not shown, "by a preponderance of the evidence, that the subject matter of claim 1 would have been obvious over the combination of Gleichauf, Ovadia, and Lewis." *Id.* at *15. The PTAB reached the same conclusion for independent claims 12 and 19, for which Cisco relied on the same combinations. *Id.* at *16.

Dr. Clark in his report acknowledged the PTAB's decision but summarily dismissed the PTAB's reasoning in a single paragraph:



7



(Ex. E at 24.) Elsewhere, Dr. Clark provided similarly conclusory discussions of an alleged motivation to combine Gleichauf, Ovadia, Lewis and NAC:



(*Id.* at 36.)

Dr. Clark's perfunctory arguments fail to refute the PTAB's conclusion that a POSITA would not have combined Gleichauf, Ovadia and Lewis. Nowhere in Dr. Clark's report is any explanation of where or how the prior art or the '705 Patent suggests or motivates a POSITA to

combine the references to achieve the asserted claims of the '705 Patent. K.Mizra's expert, Dr. Nenad Medvidovic, has opined that such a combination would be technically ███████

   In particular, ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

      ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ (Ex. N ¶ 209.)

### 5.    Summary of Cisco's Prior Art Defenses

To summarize, Cisco filed an IPR petition based on Gleichauf, Lewis and Ovadia that resulted in a FWD from the PTAB affirming the validity of all claims asserted in this action. Cisco served invalidity contentions referencing NAC as a prior art system but documented NAC exclusively with reference to the NAC White Paper (that Cisco itself identified as a printed publication) and INAC|POCD (a published manual for NAC users). After the FWD in the IPR, Cisco served an expert report that broadened the analysis of NAC to include unexplained, isolated

9

source code citations for only two claim elements, both of which are shown in the NAC White Paper and INAC|POCD manual. Cisco's expert report fails to overcome the deficits identified by the PTAB.

**B.      Cisco's Section 101 Defense**

In addition to invalidity based on prior art, Dr. Clark asserts that the claims of the '705 Patent are drawn to ineligible subject matter under 35 U.S.C. § 101 ("Section 101"). (Ex. E ¶ 131.) The entirety of Dr. Clark's Section 101 analysis is set forth in four paragraphs of his report spanning slightly over one page of text. (*Id.* ¶¶ 131-134.) Dr. Clark's first two paragraphs are as follows:



(*Id.* ¶¶ 131-132.)

The next paragraph consists solely of a description of Dr. Clark's alleged ███████████

███████████████████████████████████████████████████████████████████

(*Id.* ¶ 133.)

Next, Dr. Clark notes that "the claims of the '705 Patent were rejected by the examiner over the prior art until the applicant agreed to amend to add the limitations of redirecting to a quarantine server using DNS and HTTP redirection and serving a quarantine notification page," and states that based on the NAC system, "these were entirely routine and conventional steps well known in the field of access control." (*Id.* ¶ 134.) Dr. Clark then asserts,



(*Id.*) In deposition, Dr. Clark admitted that

(Ex. J at 84:12-15.) In particular, Dr. Clark agreed that

(*Id.* at 84:20-24.)

## III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (internal quotations omitted). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating a lack of a genuine dispute of material fact lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elec. Techniques, Inc.*

*v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). However, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

## IV.    ARGUMENT

### A.    Cisco Cannot Prove Invalidity Based on Prior Art

#### 1.    Cisco is Estopped from Relying on its Prior Art Combinations Because it Could Have Raised Its NAC Arguments at the PTAB

##### a.    IPR estoppel applies to patents, printed publications, and products described in printed publications

The statutory IPR scheme prevents the tactic that Cisco seeks to pursue here, namely, losing at the PTAB and pressing identical arguments in district court. Under 35 U.S.C. § 315(e)(2) ("Section 315(e)(2)"):

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision . . . may not assert . . . in a civil action . . . the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

The first two requirements for estoppel are easily met here. Cisco was the Petitioner in IPR2021-00593 and that proceeding resulted in a FWD. The question, then, is whether Cisco's grounds for prior art invalidity in this case were "raised or reasonably could have been raised" in the prior IPR proceeding. As Cisco *did* raise Gleichauf, Lewis and Ovadia in its IPR, the specific question here is whether Cisco *could have raised* its arguments concerning NAC in the IPR as well. The answer—it could have and is now estopped from presenting the defense at trial.

Cisco *did* rely on Gleichauf, Lewis and Ovadia and there is no dispute that Cisco was aware of *its own* NAC product public documentation and thus could have relied on that NAC documentation as well during the IPR. *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00071-JRG-RSP, 2019 WL 5677511, at *4 (E.D. Tex. Oct. 30, 2019) (holding that "reasonably could have raised" is meant to include prior art that a petitioner actually knew about or that "a skilled searcher conducting a diligent search reasonably could have been expected to discover") (internal quotations omitted).

Cisco will no doubt argue that none of the grounds raised here could have been raised in the IPR because Cisco relies on NAC as a prior art *product* and IPR petitions can be based only on patents or printed publications. 35 U.S.C. § 311(b) (limiting *inter partes* review to invalidity grounds "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications"). But courts have rejected precisely this effort to circumvent the estoppel provision of Section 315(b)(e)(2) with "system prior art as printed subject matter in disguise." *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017). If a defendant's "purported system prior art relies on or is based on patents or printed publications that [the defendant] would otherwise be estopped from pursuing at

trial, . . . then [the defendant] should be estopped from presenting those patents and printed publications at trial." *Id.*

For example, in *Wasica Finance GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 453 (D. Del. 2020), the defendant, like Cisco here, raised three prior art invalidity grounds in the district court that relied in part on physical sensors as system prior art. *Id.* at 452. All the cited patents and printed publication had been raised by the defendant in a previous IPR, with defendant arguing that estoppel under Section 315(e)(2) did not apply because the sensors could not have been raised as prior art in the IPR. *Id.* at 453. There was no dispute that a prior printed publication "disclose[d] all of the relevant features" of the sensors and thus the system prior art. *Id.* The court thus considered

> whether an obviousness combination – whose only relevant difference from a prior IPR combination is the inclusion of a physical product as one component, where all the relevant features of that physical product had been disclosed in a patent or printed publication that reasonably could have been raised during the IPR – is estopped as a "ground" that "reasonably could have been raised" during the IPR.

*Id.* The court held that "IPR estoppel applies in the circumstances presented here." *Id.* at 454.

The court in *Wasica* acknowledged that not all district courts to consider this issue adopted the same conclusion, finding the plaintiff's argument more persuasive and noted that the majority of district courts to have considered the question had held that estoppel applied where a prior art system was adequately disclosed by a patent or printed publication. *Id.* at 454 n.6. Further, this Court recently applied the holding of *Wasica* in *Hafeman v. LG Elecs., Inc.*, No. 6:21-cv-00696-ADA, Omnibus Pretrial Conference Order at No. 3 (W.D. Tex.) (Ex. O.) This Court had also previously approved the holding of *Wasica* in *CliniComp Int'l, Inc. v. Athenahealth, Inc.*, No. A-18-CV-00425-LY, 2020 WL 7011768, at *2 (W.D. Tex. Oct. 28, 2020). There, the Court acknowledged the holding in *Wasica* that Section 315(e)(2) "prevented the defendant from relying

14

on a physical sensor that was 'materially identical' to a *patent* the defendant could have raised during the IPR proceeding." *Id.* But the Court held that *Wasica* was distinguishable in that case because the defendant in *CliniComp* relied on "non-public documents and other information that are not 'printed publications.'" *Id.* As discussed below, that is not the situation here, meaning estoppel should apply.

### b. All relevant aspects of NAC are disclosed in Cisco's own printed publications

No doubt aware of the holding in *CliniComp*, Cisco apparently sought to inoculate its obviousness case against an estoppel challenge by tossing in isolated citations to confidential source code for two claim limitations in Dr. Clark's claim chart. But Cisco's invalidity case here is much closer to the circumstances of *Wasica* than *CliniComp*. In *CliniComp*, the defendant "relie[d] *extensively* on non-public documents or information that [it] necessarily could not have used in the IPR proceedings." *Id.* (emphasis added). Here, Cisco's reliance on confidential source code is *de minimis*, cited for only two claim limitations and with no substantive discussion or analysis. Critically, Dr. Clark's claim charts otherwise cite exclusively to the NAC White Paper and INAC|POCD, the two printed publications Cisco relied on in documenting NAC for its invalidity contentions. And Dr. Clark himself admitted that the subject matter for which he cited source code – █████████████████████████ – is also disclosed in Cisco's public documents. (Ex. J at 86:3-17.)

Dr. Clark's meager source code citations thus fail to "provide a substantive difference to the challenger's invalidity argument that would not have been available by solely relying on the patents and publications describing the device," meaning estoppel applies to NAC. *Boston Scientific Corp. v. Cook Group Inc.*, No. 1:17-cv-03448-JRS-MJD, 2023 WL 1452172, at *33

(S.D. Ill. Jan. 31, 2023).[3] Once Dr. Clark's source code citations are properly disregarded under this principle, Cisco seeks to rely entirely on arguments related to NAC that arise from printed publications that were in Cisco's possession prior to the filing of the IPR petition. The NAC White Paper is a "patent or printed publication" by Cisco's own admission and unquestionably could have been cited in the IPR. Further, Cisco implicitly represented that all relevant information concerning NAC is disclosed in the NAC White Paper by relying solely on the NAC White Paper in its Preliminary Invalidity Contentions.

Likewise, INAC|POCD is a printed publication from Cisco's own files and could have been cited in the IPR. "Printed publication" has been interpreted to mean that the reference must have been "sufficiently accessible to the public interested in the art" before the critical date. *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004). "A reference is considered publicly accessible if 'persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.'" *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1369 (Fed. Cir. 2019) (quoting *Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 772 (Fed. Cir. 2018)). INAC|POCD meets these criteria because Cisco admits the document was published in 2004.

As explained above, INAC|POCD is a manual for the installation and use of NAC, and its intended audience is system engineers and network administrators at companies using NAC. Such manuals are routinely treated as "printed publications" for IPR purposes. For example, in *Altamont Software, Inc. v. Sorna Corp.*, No. IPR2019-00218, 2020 WL 2486722, at *6-7 (P.T.A.B. May 13, 2020), the PTAB held that a reference that "explains the general features of DICOMView software and provides a guide for its use" was a printed publication. The PTAB held that the reference "was

---

[3] This Court adopted this holding in the *Hafeman* Omnibus Pretrial Conference Order. (Ex. O.)

available to purchasers of DICOMView Review Station, who would have reasonably included 'the public interested in the art'" as of the relevant date. *Id.* at *7. Likewise, in *Actifio, Inc. v. Delphix Corp.*, No. IPR2015-00052, 2016 WL 1393513, at *5 (P.T.A.B. Mar. 31, 2016) the PTAB held that "an installation and administration guide for commercially available software" qualified as a printed publication.

INAC|POCD, like the references discussed above, is a user implementation document for commercially available software, was admittedly published in 2004 and thus a printed publication. Indeed, "moving from a printed publication (*such as a manual describing a device*) in an IPR proceeding to a physical product (such as the device described in the manual) in litigation" is exactly the shell game that triggered IPR estoppel in *Wasica*. 432 F.Supp.3d at 453-54 (emphasis added). The same result as in *Wasica* is likewise warranted here.

Cisco's invalidity contentions initially relied exclusively on the NAC White Paper and subsequently relied on the NAC White Paper and INAC|POCD ***with no citations to source code*** that was in Cisco's possession all along. This conduct effectively admits that all relevant features of NAC are described in those printed publications. Not surprisingly, then, Dr. Clark's report relies almost entirely on the NAC White Paper and INAC|POCD. Dr. Clark's sixteen non-substantive citations to source code files for two claim elements, without description or explanation, do not constitute "extensive" reliance on non-public material, *CliniComp*, 2020 WL 7011768 at *2, or "provide a substantive difference" from Cisco's printed publications, *Boston Scientific*, 2023 WL 1452172, at *33, that would defeat a showing of estoppel. Section 315(e)(2) estops Cisco from relying on the NAC product in this proceeding.

### c. All relevant aspects of NAC were previously presented to the PTAB via Gleichauf

As a separate basis for estoppel, the Court should find that Gleichauf – ████████ – according to Cisco (Ex. L at 66:4-67:14) – discloses all relevant aspects of NAC. Estoppel thus arises because NAC *was* presented to the PTAB in Cisco's IPR. As discussed above, Cisco's witness and Gleichauf itself inextricably tie NAC and Gleichauf together such that Gleichauf discloses all relevant aspects of NAC. The PTAB considered Gleichauf, and thus considered NAC. Under Section 315(e)(2), Cisco cannot take arguments that were considered and rejected by the PTAB and present them to the jury in this Court.

### 2. Cisco Cannot Prove Invalidity by Clear and Convincing Evidence

As a separate, independent, basis for summary judgment, Cisco cannot prove anticipation or obviousness by clear and convincing evidence because Dr. Clark's prior art combinations provide no more information than the theories rejected by the PTAB under a lower standard of proof (preponderance of the evidence). In particular, all relevant aspects of NAC are described not only in the NAC White Paper and in INAC|POCD, but in Gleichauf, which was presented to and considered by the PTAB in affirming the validity of all relevant claims of the '705 Patent.

First, neither NAC nor Gleichauf anticipates any claim of the '705 Patent because Cisco acknowledged Gleichauf's shortcomings in the IPR. NAC discloses no more than Gleichauf. Summary judgment as to anticipation is thus warranted. Second, and relatedly, because NAC discloses no more than Gleichauf, the combination of NAC with any of Gleichauf, Lewis and Ovadia fails to render obvious any claim of the '705 Patent for the reasons found by the PTAB.

The PTAB's FWD, while not formally binding on this Court, nonetheless lays bare the paucity of evidence supporting Cisco's prior art defenses. In this Court, Cisco must prove anticipation or obviousness by clear and convincing evidence. *Golden Blount, Inc. v. Robert H.*

*Peterson Co.*, 365 F.3d 1054, 1058 (Fed. Cir. 2004). In the PTAB, however, unpatentability need only be shown by a preponderance of the evidence for the claims to be held invalid. 35 U.S.C. § 316(e). If Cisco could not prove its prior art defenses under the PTAB's lower burden of proof, Cisco *a fortiori* cannot prove its defenses here. *See Procter & Gamble Co. v. Team Techs., Inc.*, Case No. 1:12-cv-552, 2014 WL 12656554, at *10 (S.D. Ohio July 3, 2014) (granting summary judgment of no invalidity where under the "'reasonable likelihood' standard, which is significantly lower than the 'clear and convincing' burden in this litigation, the PTAB found that Clio's and Dr. Gaffar's inherency arguments were insufficient."); *see also Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered."); *cf. DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, No. CV H-20-2123, 2022 WL 4350264, at *11 (S.D. Tex. Sept. 19, 2022) (noting that PTAB decisions can provide "corroboration for the courts' decisions" regarding the sufficiency of prior art).

The PTAB's decision was correct on the merits, and Dr. Clark has offered no rationale for this Court, or the jury, to find a motivation to combine Cisco's references. As discussed above, Dr. Clark's three conclusory paragraphs purporting to challenge the PTAB's conclusion that a POSITA would be unmotivated to combine Cisco's references fail to offer any substantive rationale for Cisco's proffered combination. (*See* Ex. J at 65:8—69:10 (admitting that the three referenced paragraphs are the entirety of his analysis).) And K.Mizra's expert has made clear that such a combination would be ████████ as a technical matter. (Ex. N ¶ 159.)

**B.** **Cisco Cannot Prove Patent Ineligibility**

Courts apply a two-part test to determine whether a patent is directed to eligible subject-matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). First, a court must determine whether the claims at issue are "directed to a patent-ineligible concept" such as an

abstract idea. *Id.* at 218. If the claims are directed to a patent-ineligible concept, a court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). Step two of the analysis is "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72–73) (brackets omitted). Step two is satisfied "when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (internal quotations omitted) (alteration in original).

"[T]he presumption of validity extends to patent eligible subject-matter." *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2020 WL 278481, at *4 (W.D. Tex. Jan. 10, 2020). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368.

Dr. Clark's testimony cannot show patent ineligibility. Regarding *Alice* Step One, "the Court may consider expert testimony as long as the testimony addresses the claim language, statements in the written description, or the prosecution history." *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 WL 4587565, at *3 (E.D. Tex. Sept. 8, 2022), *report and recommendation adopted*, No. 2:21-cv-00126-JRG-RSP, 2022 WL 4587492 (E.D. Tex. Sept. 27, 2022). Here, Dr. Clark ***does not*** address any of these matters, instead summarily declaring that the

claims of the '705 Patent are directed to ███████████████ (Ex. E ¶ 132.) Having

failed to explain his testimony with reference to any intrinsic evidence whatsoever, Dr. Clark

cannot competently testify that the '705 Patent fails *Alice* Step One. And even if Dr. Clark could

address this issue, he admitted that ███████████████████

███████████████ (Ex. J at 84:12-24.) Because Cisco's own

expert admits that the claims of the '705 Patent pass *Alice* Step One, Cisco cannot now argue that

the claims are ineligible under Section 101.

Dr. Clark fares no better regarding *Alice* Step Two. Here, Dr. Clark's discussion is

concerned exclusively with a single alleged prior art system—the NAC system at the center of

Cisco's invalidity defenses. (Ex. E ¶¶ 132-134.) According to Dr. Clark, the mere assertion that

████████████████████████████████

███ is sufficient to render the entire patent "routine and conventional." (*Id.*)[4] But this assertion

is incorrect as a matter of law, as it is well-settled that "inventions that are comprised of elements

that are individually well-known in the prior art can still satisfy *Alice* Step 2 if the 'ordered

combination' of those elements embodies an inventive concept." *PPS Data, LLC v. Jack Henry &

Assocs., Inc.*, 404 F. Supp. 3d 1021, 1039–40 (E.D. Tex. 2019) (citing *BASCOM Glob. Internet

Servs., Inc. v. AT & T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). Dr. Clark does not

explain how the '705 Patent (or the NAC system for that matter) fails to embody an inventive

concept, instead simply declaring that the '705 Patent is "routine and conventional" because

████████████████████████████ That

position fails as a matter of law. *Id.* at 140.

---

[4] As discussed in Section A *supra*, neither Cisco nor Dr. Clark in fact believe that the NAC system is an anticipatory Section 102 reference, and the NAC system does not render any claim of the '705 Patent obvious in combination with any prior art reference.

Separately, the excessively flimsy nature of Dr. Clark's putative Section 101 analysis provides an independent basis for summary judgment, as "[c]onclusory expert declarations devoid of facts upon which the conclusions were reached do not raise a genuine issue of material fact." *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-0661-JRG-RSP, 2019 WL 7580245, at *6 (E.D. Tex. May 2, 2019) (quoting *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000)). As discussed above, Dr. Clark's *Alice* Step One conclusion is entirely unsupported by any references to the intrinsic evidence, and his *Alice* Step Two analysis consists of a few paragraphs of text describing a single prior art system. These meager allegations cannot support a finding of patent eligibility. Summary judgment in K.Mizra's favor on Cisco's Section 101 defense is appropriate.

## V.     <u>CONCLUSION</u>

K.Mizra respectfully requests that the Court grant summary judgment in K.Mizra's favor as to Cisco's prior art and Section 101 defenses.

Dated: June 9, 2023

Respectfully submitted,

By: /s/ *Matthew C. Holohan*
    Michael C. Smith
    Texas Bar No. 18650410
    michael.smith@solidcounsel.com
    Scheef & Stone, LLP
    113 E. Austin Street
    Marshall, TX 75670
    (903) 938-8900

    Anna Rebecca Skupin
    Texas Bar No. 24084272
    becca.skupin@solidcounsel.com
    Scheef & Stone, LLP
    200 North Travis Street
    Suite 402
    Sherman, TX 75090
    (430) 262-5660

    Robert R. Brunelli*
    CO State Bar No. 20070
      rbrunelli@sheridanross.com
    Paul Sung Cha*
    CO State Bar No. 34811
      pscha@sheridanross.com
    Patricia Y. Ho*
    CO State Bar No. 38013
      pho@sheridanross.com
    Matthew C. Holohan*
    CO State Bar No. 40996
      mholohan@sheridanross.com
    Bart A. Starr*
    CO State Bar No. 50446
      bstarr@sheridanross.com
    Angela J. Bubis*
    CO State Bar No. 58144
      abubis@sheridanross.com
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, CO 80202
    Telephone: 303-863-9700
    Facsimile: 303-863-0223
    litigation@sheridanross.com

    *Admitted pro hac vice*
    *Attorneys for Plaintiff K.Mizra LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 9, 2023, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

By: <u>*/s/ Matthew C. Holohan*</u>
    Matthew C. Holohan*
    CO State Bar No. 40996
    mholohan@sheridanross.com
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, CO 80202
    Telephone: 303-863-9700
    Facsimile: 303-863-0223
    litigation@sheridanross.com

    *Admitted pro hac vice*
    *Attorney for Plaintiff K.Mizra LLC*

24

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| K.MIZRA LLC, | Civil Action No.: 6:20-cv-01031-ADA |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

## OMNIBUS ORDER REGARDING PRETRIAL MOTIONS

Following the July 13, 2023 Initial Pretrial Conference in this matter (ECF No. 176), the parties respectfully submit this Joint Proposed Omnibus Order regarding the Court's rulings on the parties' pretrial motions:

| **Motion** | **Ruling** |
|---|---|
| Defendant Cisco Systems, Inc.'s ("Cisco" or "Defendant") Motion for Summary Judgment of Noninfringement (ECF Nos. 119, 139-140, 159) | Denied. |
| Plaintiff K.Mizra LLC's ("K.Mizra" or "Plaintiff") Motion for Summary Judgment on Defendant Cisco's Contract-Based Affirmative Defense and Counterclaims (ECF Nos. 123-124, 142, 161) | Denied. |
| Defendant's Motion for Summary Judgment or Partial Summary Judgment Based on License (ECF Nos. 113, 143, 145, 158) | Denied. |
| Plaintiff's Motion for Summary Judgment as to Defendant's Cisco's Defenses Based on Prior Art and Patent Eligibility (ECF Nos. 121-122, 144, 157) | Granted. |

| Motion | Ruling |
|---|---|
| Plaintiff's Motion to Exclude Opinion of Defendant Cisco's Expert, Dr. Paul Clark (ECF Nos. 118, 120, 138, 162) | As to enablement under 35 U.S.C. § 112, the Motion is denied as moot.<br><br>Denied as to anticipation and obviousness under 35 U.S.C. §§ 102-103. |
| Defendant's Motion to Exclude K.Mizra's Damages Expert (ECF Nos. 128-129, 146-147, 160) | As set forth in the transcript of the July 13, 2023 pretrial hearing, the parties will confer and cooperate to complete damages discovery and supplement and/or amend affirmative and rebuttal expert reports on damages issues. Once completed, the parties will contact the Court to reset and schedule *Daubert* briefing and the pretrial conference. Accordingly, the Motion is denied without prejudice. |
| Plaintiff's Motion to Exclude Opinion of Cisco's damages expert, Ambreen Salters (ECF Nos. 130, 141, 163) | As set forth in the transcript of the July 13, 2023 pretrial hearing, the parties will confer and cooperate to complete damages discovery and supplement and/or amend affirmative and rebuttal expert reports on damages issues. Once completed, the parties will contact the Court to reset and schedule *Daubert* briefing and the pretrial conference. Accordingly, the Motion is denied without prejudice. |

**SIGNED** this 27th day of July, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

2

# EXHIBIT D

6/23/25, 1:53 PM                                     What is the difference between isolation and quarantine? | HHS.gov



<u>Home </></u>      <u>Answers </answers/index.html></u>      <u>Public Health and Safety </answers/public-</u>…

**Navigate to:**

# What is the difference between isolation and quarantine?

Isolation and quarantine are public health practices <https://www.cdc.gov/quarantine/quarantineisolation.html> used to protect the public by preventing exposure to people who have or may have a contagious disease.

- **Isolation** separates sick people with a contagious disease from people who are not sick.

- **Quarantine** separates and restricts the movement of people who were exposed to a contagious disease to see if they become sick. These people may have been exposed to a disease and do not know it, or they may have the disease but do not show symptoms.

Follow CDC guidance about quarantine and isolation for COVID-19:

**Ex. D, p. 1**

6/23/25, 1:53 PM                              What is the difference between isolation and quarantine? | HHS.gov

- **Quarantine** and stay away from others when you have been in close contact with someone who has COVID-19.

- **Isolate** if you are sick or have tested positive for COVID-19, even if you don't have symptoms.

Posted in: Public Health and Safety </answers/public-health-and-safety/index.html>

# Search HHS FAQs by questions or keywords:

Content created by Digital Communications Division (DCD)
Content last reviewed January 12, 2022

Ex. D, p. 2

# EXHIBIT E

Application/Control Number: 11/237,003                                    Page 2
Art Unit: 2437

## DETAILED ACTION

This Examiner Amendment and Reasons for Allowance action is in response to the filing on 04/12/2012.

## EXAMINER'S AMENDMENT

1.     An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with Inventor Aaron Emigh on 06/08/2012.

2.     Replacing Claims 1, 6, 9, 14, and 24 as following:

**Claim 1**: (currently amended) A method for protecting a network, comprising:

detecting an insecure condition on a first host that has connected or is attempting to connect to a protected network, wherein detecting the insecure condition includes contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness, wherein the valid digitally signed attestation of cleanliness includes at least one of an attestation that the trusted computing base has ascertained that the first host is not infested, and an attestation that the trusted computing base has

Application/Control Number: 11/237,003                                                        Page 3
Art Unit: 2437

ascertained the presence of a patch or a patch level associated with a software
component on the first host;

when it is determined that the response does not include a valid digitally
signed attestation of cleanliness, quarantining the first host, including by
preventing the first host from sending data to one or more other hosts associated
with the protected network, wherein preventing the first host from sending data to
one or more other hosts associated with the protected network includes receiving
a service request sent by the first host, serving a quarantine notification page to
the first host when the service request comprises a web server request, and in
the event the service request comprises a DNS query, providing in response an
IP address of a quarantine server configured to serve the quarantine notification
page if a host name that is the subject of the DNS query is not associated with a
remediation host configured to provide data usable to remedy the insecure
condition; and

permitting the first host to communicate with [[a]] the remediation host
configured to provide data usable to remedy the insecure condition.

**Claim 6**:        (currently amended) A method as recited in claim 1, wherein
preventing the first host from sending data to the one or more other hosts permitting the
first host to communicate with the remediation host includes:

detecting an outbound communication from the first host; and

forwarding the outbound communication if it is addressed to [[a]]
the remediation host.

Application/Control Number: 11/237,003                                         Page 4
Art Unit: 2437

**Claim 9**:           (currently amended) A system for protecting a network, comprising:

a processor configured to:

detect an insecure condition on a first host that has connected or is attempting to connect to a protected network, wherein detecting the insecure condition includes contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness, wherein the valid digitally signed attestation of cleanliness includes at least one of an attestation that the trusted computing base has ascertained that the first host is not infested, and an attestation that the trusted computing base has ascertained the presence of a patch or a patch level associated with a software component on the first host;

when it is determined that the response does not include a valid digitally signed attestation of cleanliness, quarantine the first host, including by preventing the first host from sending data to one or more other hosts associated with the protected network, wherein preventing the first host from sending data to one or more other hosts associated with the protected network includes receiving a service request sent by the first host, serving a quarantine notification page to the first host when the service request comprises a web server request, and in the event the service request comprises a DNS query, providing in response an IP address of a quarantine server configured to serve the quarantine notification

<u>page if a host name that is the subject of the DNS query is not associated with a</u>

<u>remediation host configured to provide data usable to remedy the insecure</u>

<u>condition</u>; and

permit the first host to communicate with [[a]] <u>the</u> remediation host

~~configured to provide data usable to remedy the insecure condition~~; and

a memory coupled to the processor and configured to provide instructions to the

processor.

**Claim 14**:        (currently amended) A computer program product for protecting a

network, the computer program product being embodied in a non-transitory computer

readable medium and comprising computer instructions for:

detecting an insecure condition on a first host that has connected or is

attempting to connect to a protected network, wherein detecting the insecure

condition includes contacting a trusted computing base associated with a trusted

platform module within the first host, receiving a response, and determining

whether the response includes a valid digitally signed attestation of cleanliness,

wherein the valid digitally signed attestation of cleanliness includes at least one

of an attestation that the trusted computing base has ascertained that the first

host is not infested, and an attestation that the trusted computing base has

ascertained the presence of a patch or a patch level associated with a software

component on the first host;

when it is determined that the response does not include a valid digitally

signed attestation of cleanliness, quarantining the first host, including by

Application/Control Number: 11/237,003                                          Page 6
Art Unit: 2437

preventing the first host from sending data to one or more other hosts associated

with the protected network, wherein preventing the first host from sending data to

one or more other hosts associated with the protected network includes receiving

a service request sent by the first host, serving a quarantine notification page to

the first host when the service request comprises a web server request, and in

the event the service request comprises a DNS query, providing in response an

IP address of a quarantine server configured to serve the quarantine notification

page if a host name that is the subject of the DNS query is not associated with a

remediation host configured to provide data usable to remedy the insecure

condition; and

permitting the first host to communicate with [[a]] the remediation host

~~configured to provide data usable to remedy the insecure condition~~.

**Claim 24**: (canceled)

*Allowance*

3.      Claims 1-2, 4-10, 12-14, 25, and 28-33 are allowed.

4.      Claims 1, 6, 9, 14 have been amended which overcome the Examiner's prior

rejections, see paper of 10/12/2011.  Examiner withdraws all outstanding rejections to

claims 1-8, 9-14, and 25-33.

*Examiner's Statement of Reasons for Allowance*

5.      The following is an examiner's statement of reasons for allowance:

Application/Control Number: 11/237,003                                    Page 7
Art Unit: 2437

The present invention is directed to a method, a system, and a computer program product detecting an insecure condition on a host computer on a protected network.  it verifies cleanliness of the host computer by contacting a trusted platform module within the host computer, and once detected the host computer is insecure, it limits the host computer is quarantined to prevent contagion.  The host computer is limited only be able to can communicate with a quarantine server not any other host until it has been remedied.

Independent claim 1, 9, and 14 recite the uniquely distinct features of "detecting an insecure condition on a first host that has connected or is attempting to connect to a protected network, wherein detecting the insecure condition includes contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness, wherein the valid digitally signed attestation of cleanliness includes at least one of an attestation that the trusted computing base has ascertained that the first host is not infested, and an attestation that the trusted computing base has ascertained the presence of a patch or a patch level associated with a software component on the first host; when it is determined that the response does not include a valid digitally signed attestation of cleanliness, quarantining the first host, including by preventing the first host from sending data to one or more other hosts associated with the protected network, wherein preventing the first host from sending data to one or more other hosts associated with the protected network includes receiving a service request sent by the first host, serving a quarantine notification page

Application/Control Number: 11/237,003                                    Page 8
Art Unit: 2437

to the first host when the service request comprises a web server request, and in the

event the service request comprises a DNS query, providing in response an IP address

of a quarantine server configured to serve the quarantine notification page if a host

name that is the subject of the DNS query is not associated with a remediation host

configured to provide data usable to remedy the insecure condition; and permitting the

first host to communicate with the remediation host".

The closest prior art, Liang (US 7287278 B2) and Yan et al. (US 2005/0033987

A1 disclose detecting abnormal events on host, and redirecting to quarantine serve to

get remediated; however, they fail to anticipate or render serving both the specific

quarantine notification page with the DNS redirection when in combination with the

remaining claim limitations.

Therefore the claims are allowable over the cited prior art.

Dependent claims are allowed as they depend from allowable independent

claims.

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.   Such submissions should be clearly labeled "Comments on

Statement of Reason for Allowance".

Application/Control Number: 11/237,003                                              Page 9
Art Unit: 2437

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to JING SIMS whose telephone number is (571)270-7315. The examiner can normally be reached on 9:00am-5:00pm EST, Mon-Fri.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Eleni Shiferaw can be reached on (571)272-3867.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Jing  Sims/
Examiner, Art Unit 2437

/Eleni A Shiferaw/

Supervisory Patent Examiner, Art Unit 2437