UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**Case No.: 25-cv-60803-WPD**

K.MIZRA LLC,

    Plaintiff,

v.

CITRIX SYSTEMS, INC. and CLOUD SOFTWARE GROUP, INC.,

    Defendants.
_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
DISMISS K.MIZRA LLC'S COMPLAINT**

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NO OTHER COURT HAS FULLY CONSIDERED THE ISSUE PRESENTED | 2 |
| III. | THE ASSERTED CLAIMS OF THE '705 PATENT ARE DIRECTED TO AN ABSTRACT IDEA THAT IS A WELL-KNOWN HUMAN PRACTICE | 3 |
| IV. | THE MOTION ADDRESSED AND ANALYZED THE ASSERTED CLAIMS OF THE '705 PATENT WITH SPECIFICITY | 5 |
| V. | THE CLAIMS OF THE '705 PATENT CONTAIN NO INVENTIVE CONCEPT | 7 |
| VI. | CLAIM 19 OF THE '705 PATENT IS REPRESENTATIVE | 10 |
| VII. | CONCLUSION | 10 |

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*24/7 Customer, Inc. v. LivePerson, Inc.*,
  No. 15-cv-02897-JST, 2017 WL 2311272 (N.D. Cal. May 25, 2017) ....................................10

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)......................................................................................................4, 8, 9, 10

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)................................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................................7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019).........................................................................................................6

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017).......................................................................................................2

*Content Extraction and Transmission LLC, v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2020)......................................................................................................10

*Digital Media Techs., Inc. v. Hulu, LLC*,
  No. 4:16cv245, 2017 WL 4750705 (N.D. Fla. July 3, 2017) .......................................................4

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*
  955 F.3d 1317 (Fed. Cir. 2020)...................................................................................................4, 6

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018).......................................................................................................4

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
  No. 2:16-CV-00505-JRG, 2017 WL 10185856 (E.D. Tex. Oct. 24, 2017)............................10

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016).......................................................................................................4

*K.Mizra LLC v. Cisco Sys., Inc*,
  No. 6:20-cv-01031-ADA (W.D. Tex.)..........................................................................................1

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018).......................................................................................................7

*People.ai, Inc. v. Clari Inc.*,
  No. 2022-1364, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ......................................................9

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ......................................................................................4

*Procter & Gamble Co. v. QuantifiCare Inc.*,
    288 F. Supp. 3d 1002 (N.D. Cal. 2017) ...............................................................................10

*Sec. First Innovations, LLC v. Google LLC*,
    No. 2:23-cv-97, 2023 WL 7726389 (E.D. Va. Nov. 15, 2023) ..............................................4

*Synopsys, Inc. v. Avatar Integrated Sys., Inc.*,
    No. 20-cv-04151-WHO, 2020 WL 6684853 (N.D. Cal. Nov. 12, 2020) ..............................10

*Tew v. Thomas*,
    No. 10-00511 LEK, 2011 WL 578846 (D. Haw. Feb. 9, 2011) ............................................2

**Statutes**

35 U.S.C. § 101............................................................................................................... *passim*

§ 1003.22, Fla. Stat. (2003).....................................................................................................4, 6, 7

**I.      INTRODUCTION**

In its Motion to Dismiss K.Mizra's Complaint (the "Motion") (Mot., ECF No. 19) Defendants explained that the claims of U.S. Patent No. 8,234,705 ("the '705 patent") are (i) directed to the abstract idea of protecting a network from an infected host through contagion isolation and inoculation and (ii) lack any inventive concept that amounts to significantly more than this abstract idea. The '705 patent merely claims a computer implementation of the idea of protection from infection through isolation and inoculation, a well-known human practice. Mot. at 11-14, 16. The '705 patent invents no new technology and does not use existing technical components in an innovative way; instead, the asserted claims concededly recite how known hardware and software components are used for their conventional purposes to accomplish the abstract idea of the claims. *Id.* at 15, 17-18. The asserted claims are therefore patent-ineligible under 35 U.S.C. § 101.

The central argument K.Mizra musters in its Response to the Motion (the "Response") (Resp., ECF No. 22) is that patent-eligibility of the '705 patent has never been properly presented in other district court litigation. K.Mizra identifies *K.Mizra LLC v. Cisco Systems, Inc*, No. 6:20-cv-01031-ADA (W.D. Tex.), where the court found "conclusory" "[Cisco's expert's] Section 101 analysis," an analysis "set forth in four paragraphs of his report spanning slightly over one page of text." Resp. Ex. B at 15, 27. But K.Mizra does not even suggest that collateral estoppel applies, because it cannot, nor that any out-of-district case binds this Court, because it does not. Its headline argument instead is that this Court should somehow assume that because patent-eligibility was left unresolved in other cases, it can be resolved in K.Mizra's favor here. Resp. at 1-3. Of course, previous K.Mizra cases—in which patent eligibility was never fully adjudicated—have no bearing on the challenge to the '705 patent as patent-ineligible in this case. To the contrary, the issue is ripe for consideration.

K.Mizra's other arguments are similarly misguided and incorrect. For example, K.Mizra complains the Motion lacks sufficient analysis of the actual claim language, but K.Mizra never identifies any specific claim language it contends Defendants should have, but did not analyze. Resp. at 7-8. Similarly, K.Mizra suggests claim construction "can" affect the § 101 analysis, but never states its proposed construction of any claim term and, in any event, "acknowledges this Court is bound by current Federal Circuit precedent," which dictates patent eligibility can "be decided before claim construction." *Id.* at 18-19, n.11. Indeed, the law is perfectly clear: courts

1

*should* decide patent eligibility on a motion to dismiss when the non-moving party provides "no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). K.Mizra has not done so here. Defendants' challenge to the '705 patent as patent-ineligible is therefore ripe for the Court's determination, and the Court should accordingly dismiss the Complaint with prejudice for the reasons set forth in the Motion.

## II.   NO OTHER COURT HAS FULLY CONSIDERED THE ISSUE PRESENTED

K.Mizra contends that because other courts have not fully considered patent eligibility of the '705 patent this Court should reject the Motion. Resp. at 1, 2-3. In the Response, K.Mizra asks this Court to take judicial notice of other cases, none of which were filed within this or the Eleventh Circuit, decided by the Court of Appeals for the Federal Circuit, or involved a defendant moving on the issue Defendants present in the Motion. *Id.* at 2-3. Tellingly, nowhere in its Response does K.Mizra suggest that any prior decision binds this Court or even refer to the elements of collateral estoppel. *Id.*

In the Response, K.Mizra instead focuses on its prior case against Cisco, attaching an order in which relevant analysis appears to have been redacted. Resp. Ex. B. What can be gleaned from the attachment is only that K.Mizra argued that Cisco's expert provided "slightly over one page of text" in his expert report about patent eligibility, and that the court presumably found the expert's opinions "flimsy" and "meager." *Id.* at 15, 27. According to K.Mizra, Cisco clearly did not fully or adequately present a § 101 defense, and that case accordingly offers no analysis that can aid the resolution of the Motion. K.Mizra is simply wrong when it argues another court's issuance of a one-word ruling granting summary judgment concerning a defense supported only by a one-page "conclusory" and "meager" expert opinion can "contradict" Defendants' Motion, which thoroughly details why the claims of the '705 patent are directed to patent-ineligible subject matter.

Just as clearly, no conclusion or inference can be drawn from the withdrawal of a defense in a prior patent case involving Hewlett Packard Enterprise ("HPE") and Aruba Networks ("Aruba"). Resp. at 2. K.Mizra makes a strained reference to a criminal case involving a claim of ineffective assistance of counsel where the defendant "was unable to read and write and his trial counsel coerced him to accept the plea agreement [stipulating to an indeterminate ten-year term of imprisonment with a mandatory minimum of six years and eight months]." *Tew v. Thomas*, No. 10-00511 LEK, 2011 WL 578846, at *1 (D. Haw. Feb. 9, 2011). But the prior case with HPE and

2

Aruba was not a criminal case, and there was no such liberty interest at stake for the defendants—only money in the form of damages for patent infringement. A decision by counsel in a civil case to withdraw a defense has no bearing on the merits of a defense on the same grounds presented by different counsel for a different party in a different case. K.Mizra's arguments concerning prior litigations are just a distraction from the substantive arguments presented in the Motion.

### III. THE ASSERTED CLAIMS OF THE '705 PATENT ARE DIRECTED TO AN ABSTRACT IDEA THAT IS A WELL-KNOWN HUMAN PRACTICE

The '705 patent is directed to protecting a network from an infected host through contagion isolation and inoculation. *See* Mot. at 1, 5, 7, 10-11, 15. And the Motion showed this is a well-known human practice. *Id.* at 16. In the network of students at a school system, for example, a child attending school for the first time may have been exposed to disease and may be infected, so they are either isolated—denied entry to school—or inoculated through immunization.

Although K.Mizra has spent years litigating a patent entitled "Contagion Isolation and Inoculation" that recites a "quarantine system," ('705 patent at Abstract), K.Mizra pretends to have no idea what quarantine means in its Response and disingenuously suggests it is "unclear" how "immunization" relates to "quarantining." Resp. at 3-4. Thus, K.Mizra asks, "how are people who have been exposed to infectious diseases 'unverified entities'"? Resp. at 4. The answer, as noted in the Motion, is that students without immunization records (i) cannot be verified by the school system as immunized and (ii) may have been exposed to infectious diseases outside of the school system network. Mot. at 4. Likewise, K.Mizra asks, "how could vaccines work against an 'unknown' disease?" Resp. at 4. Of course, as Defendants explained, an unimmunized student may or may not have been exposed to multiple infectious diseases, and may or may not show symptoms for any, so the school system requires immunization against, not one, but multiple diseases to which a student could have been exposed. Mot. at 5. But regardless of K.Mizra's feigned lack of understanding, the '705 patent, which claims protecting a network from an infected host through contagion isolation and inoculation, is directed to a well-known human practice that corresponds directly to the problem the patent attempted to solve. *See* Compl. ¶ 24.

In the Response, K.Mizra mischaracterizes the Motion as attempting to relate patent claims to the medical field. Resp. at 5. Although contagion isolation and inoculation may support public health and the medical sciences, protecting networks from infection with isolation and inoculation is simply a particular method of organizing human activity through controlling access. For this reason, courts find patent claims related to network security invalid based on analogies to checking

credentials to control access (*see* Mot. at 14 (citing *Prism Techs. LLC v. T-Mobile USA, Inc.,* 696 F. App'x 1014, 1016 (Fed. Cir. 2017))) and limiting access to authorized users (*see* Mot. at 13 (citing *Digital Media Techs., Inc. v. Hulu, LLC*, No. 4:16cv245, 2017 WL 4750705 (N.D. Fla. July 3, 2017))). More generally, courts endorse the analytical approach of using analogies to resolve invalidity arising under § 101. *Alice Corp. v. CLS Bank Int'l,* 573 U.S. 208, 220-22 (2014); *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.* 955 F.3d 1317, 1327 (Fed. Cir. 2020).

Importantly, K.Mizra admits that "the Federal Circuit has acknowledged that virus scanning generally was an abstract idea." Resp. at 5; *see Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018) (quoting *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016)). To that end, K.Mizra's efforts to distinguish its own patent from the patent found ineligible under § 101 in *Intellectual Ventures* fall flat. Resp. at 5-6. K.Mizra states, "the '705 Patent's claims are not directed to mere 'virus scanning' but rather to a comprehensive system for protecting a computer network from malware that may be installed on a host computer from migrating to the network and for rendering the host computer clean." *Id.* at 5-6. But this is just a restatement of the abstract idea: protecting a network from an infected host through contagion isolation and inoculation.

K.Mizra's willful misreadings of the arguments presented in the Motion do nothing to refute the clear invalidity of the asserted claims. In the Response at page 6, K.Mizra states: "Obviously, an immunized child is not akin to a secure computer network." That is a straw man. A school system of students is akin to a secure network of computers, and the '705 patent claims the same method for protecting a secure network from potentially infected new computers that is used for protecting school systems from potentially infected new students. The '705 patent therefore must "be found ineligible" because it "encompass[es] a process that 'long predates the [asserted patent] and is pervasive in human activity,'" *Sec. First Innovations, LLC v. Google LLC*, No. 2:23-cv-97, 2023 WL 7726389, at *16 (E.D. Va. Nov. 15, 2023) (citing *Ericsson*, 955 F.3d at 1327). Contrary to the Response at pages 6-7, this determination requires no reference to extrinsic evidence. Instead, the 2004 Florida Statute for school immunization cited in the Motion is merely an example of a well-known human practice for illustrative comparison. The same practices are used widely throughout the country and globally, and indeed, the Florida law was not new in 2004. *See* § 1003.22, Fla. Stat. (2003) (no material differences), § 1003.22, Fla. Stat. (2002) (same). The well-known and age-old practice of protection from an infected host through contagion isolation

4

and inoculation is the very same abstract idea claimed by the '705 patent.

### IV. THE MOTION ADDRESSED AND ANALYZED THE ASSERTED CLAIMS OF THE '705 PATENT WITH SPECIFICITY

K.Mizra's argument that the Motion "never once addresses precise claim language to explain how its proposed abstract idea fairly characterizes that language" can be set aside for three reasons. Resp. at 7-8. First, the Motion set out the language of claim 1 in full for this Court's consideration and provided analysis of each claim of the '705 patent. Mot. at 5-7. The Motion also includes the full language of comparable claims from other cases, enabling this Court to review with precision the manner in which other courts have considered similar claims and to directly compare the substance of those claims with the claims of the '705 patent. *Id.* at 11-15. The Motion additionally explored specific aspects of the claim language in detail to show that relevant claim elements, like the "trusted computing base," "web server request," and "DNS query," are well-known prior art that—according to the '705 patent—are employed for conventional and understood purposes. *Id.* at 15, 17-19.

Second, although K.Mizra argues at length that courts must consider the claim language in a § 101 analysis—a proposition with which Defendants agree (*see* Mot. at 9, 11, 17-18)—K.Mizra's argument rings hollow because the Response is silent as to which aspects of the claim language Defendants failed to "properly consider." Resp. at 8. Because the Motion clearly considered and analyzed the claim language, K.Mizra's mere recitation of an uncontroversial legal principle does not result in any actionable conclusion as applied to the Motion.

Tellingly, K.Mizra itself identifies only two limitations of claim 19 of the '705 patent that it contends specifically impact the patent-ineligibility analysis. K.Mizra quotes the claim's recitation of "detecting an insecure condition on a first host that has connected or is attempting to connect to a protected network." Resp. at 9. K.Mizra points to this language to state that the claim recites checking "the security status of the remote host before connecting to the protected network" and also "when a host *reconnects* to the protected network." *Id.* (emphasis in original). The word "reconnects" is not in the claim—instead, that comes from the Response's extensive discussion of the '705 patent's specification. *See Id.* at 8-9 (citing '705 patent at 1:14-41, 1:19, 1:25-31, 1:34-38, 1:38-41). In the Response, K.Mizra states that, "[t]he '705 Patent also specifically calls out threats when a host reconnects to the protected network after 'software installed on the mobile system by an operator of the protected network for the protection of the mobile system and/or the protected network [is] removed or altered without authorization.'" Resp. at 9 (quoting '705 Patent

5

at 1:25-28). The reliance on protective software being installed "by an operator of the protected network," as well as the removal or alteration of that software without authorization, flies in the face of K.Mizra's repeated arguments that the '705 patent somehow "remov[es] the once-necessary human intervention from a fundamentally mechanical process." Resp. at 7, 11-12. But regardless, "any reliance on the specification in the § 101 analysis must always yield to the claim language." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). Furthermore, if K.Mizra's point is that the claim language alone solves the reconnection problem by checking the security of a host each time it attempts to connect, then that is no technical solution at all. "Controlling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which [courts] have repeatedly found unpatentable." *Ericsson*, 955 F.3d at 1327 (citation omitted). Precisely the same effect is achieved, for example, in an analogous situation by maintaining an immunization record that must be rechecked each time that a "student transfers, is promoted, or changes schools." § 1003.22, Fla. Stat. (2003). This leads to the only other limitation of claim 19 K.Mizra identifies as specifically relevant to the patent-eligibility analysis. In the Response, K.Mizra states:

> [T]his solution is implemented by "contacting a trusted computing base associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness." '705 Patent, claim 19. In this way, the claimed system provides a real-time view of the security status of the host computer, rather than relying on previously-implemented preventive security measures that may have been compromised between connection sessions.

Resp. at 9. K.Mizra's focus on the "trusted computing base" limitation of claim 19 demonstrates there is nothing technological in nature about the claimed solution. Just like the claimed solution, a school system might require, "prior to admittance to or attendance in a public or private school," that "each child present or have on file with the school a certification of immunization for the prevention of those communicable diseases for which immunization is required by the Department of Health." § 1003.22, Fla. Stat. (2003). Furthermore, just like the solution set out in claim 19, a school system may also require that a real-time record of the immunization certification " become a part of each student's permanent record, to be transferred when the student transfers, is promoted, or changes schools," and that the "transfer of such immunization certification by Florida public schools shall be accomplished using the Florida Automated System for Transferring Education Records." *Id.* Simply put, the straightforward, intuitive, and non-technical solution referenced by

claim 19 has been implemented in school systems and other aspects of society long before the '705 patent.

Third, this Court should reject K.Mizra's belated efforts to disavow the allegations in its own pleading. In the Response, K.Mizra states that the Motion "focuses on a broad description of the claims *provided in the Complaint*, which is particularly puzzling given that Citrix also claims that these allegations are mere legal conclusions that should be ignored." Resp. at 7, note 7 (emphasis added). K.Mizra is referring here to Paragraph 34 of its own Complaint, and to be clear, the final sentence of that Paragraph is indeed a legal conclusion and should be treated as such. That conclusory allegation merely states the claims of the '705 patent "cannot be considered abstract or patent ineligible under relevant law" (Compl. ¶ 34), a legal conclusion that should not be accepted as true. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The other parts of the allegation, however, are K.Mizra's own encapsulation of the four-step "machine-implemented process" to which the claims are directed. Compl. ¶ 34. As explained *infra*, the Motion set forth and examined the language of each claim directly and K.Mizra's characterization of that claim language in its Complaint, and provided comparisons between the claims of the '705 patent and Florida's school immunization laws as a simple example to show how the claims are directed to an abstract idea that is a well known human practice. There is nothing improper about the Motion's reference to K.Mizra's pleading concerning the steps to which the '705 patent's claims are directed. It is well understood that "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1348 (Fed. Cir. 2018). Just as in *Nalco*, K.Mizra "makes several allegations about the proper scope of the [asserted patent] relevant to this analysis," and it is entirely appropriate for Defendants and this Court to refer to K.Mizra's pleading in analyzing the patent claims under § 101. *Id.* To that same end, it is noteworthy that faced with a Motion detailing the patent-ineligibility of the '705 patent, K.Mizra did not attempt to amend or add new pleadings. The legal conclusions in the Complaint, masquerading as factual allegations, cannot stand. On the other hand, K.Mizra's description of the four-step "machine-implemented process" to which the claims are directed proves that those claims are patent-ineligible. K.Mizra's attempt to run from the representations it made about the '705 patent in the Complaint should be rejected.

## V.     THE CLAIMS OF THE '705 PATENT CONTAIN NO INVENTIVE CONCEPT

K.Mizra's attempt to save its patent from a finding of invalidity under § 101 at step 2 of

the *Alice* analysis suffers from two fatal flaws. First, in the Response, K.Mizra misrepresents the facts, ignoring the '705 patent's own disclosure of the conventional and understood purpose for which the claims use well-known components of hardware and software. Second, K.Mizra misstates the law, leaning on a sentence from a single case that is taken out of context in view of the Supreme Court and Federal Circuit's explanations of the appropriate framework for analyzing patent-ineligibility.

First, the Response addresses the admission "in the specification of the '705 Patent that trusted computing modules ('TCM') existed before the invention." Resp. at 11, note 8. As it must, K.Mizra agrees "that is true." *Id.* But the Response goes astray when K.Mizra contends that "these TCMs were not, prior to the invention of the '705 Patent, used as claimed in the Patent," and further argues that "there is no evidence in this record that TCMs were previously used to improve security of protected networks in the same way as claimed in the '705 Patent." *Id.* As Defendants explained in the Motion, the purpose of these TCM components "was well understood, and the claim language referring to 'attestations' of cleanliness that are 'digitally signed' mirrors the terminology used in the prior art cited by the '705 patent," such as the Trusted Computing Group Architecture Overview. Mot. at 3 (citing '705 patent at 14:1-7). Moreover, the '705 patent itself discloses these conventional purposes and "describes behaviors of these trusted computing bases: 'for example execute antivirus scans of the remainder of the computer,' or 'digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers.'" Mot. at 3, 15 (citing '705 patent at 14:7-12).

The conventional nature of the TCMs is clear from the '705 patent's prosecution history, relevant excerpts of which were attached to the Motion as Exhibit 3. As explained in the Motion, during prosecution the examiner thrice "rejected the claims as unpatentable over prior art." Mot. at 7. Those rejections more particularly included, as an example, a rejection for obviousness under § 103 over U.S. Patent No. 7,287,278, titled "Inoculation of computing devices against a selected computer virus," which disclosed "detecting an insecure condition on a first host that has connected or is attempting to connect to a protected network … wherein detecting the insecure condition includes **contacting a trusted computing base associated with a trusted computing platform module within first host and determining whether the response includes a valid digitally signed attestation of cleanliness**…" Mot. Ex. 3 at 6-7, 26-27 (emphasis added). The prosecution history, which is intrinsic evidence about the '705 patent, identifies similar disclosures

8

in U.S. Patent Application No. 2005/0033987, as well as in other prior art. *See, e.g.*, *id.* at 6-7.

Second, K.Mizra is wrong on the law. K.Mizra's mantra is that the '705 patent provides a "technological" solution to a "technological" problem. Resp. at 1, 3, 8-9, 14-15. This phrasing comes from a single case, where the phrase is taken from a description of claims that "describe a specific, unconventional technological solution, narrowly drawn to withstand preemption concerns, to a technological problem." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1306 (Fed. Cir. 2016). But the problem of protecting a network from entities that may have been exposed to infection outside that network is not exclusively a technological problem—it recurs in nature and throughout human activity. Nor is the supposed solution of the '705 patent specific or unconventional in nature. Indeed, *Amdocs* has been repeatedly distinguished by the Federal Circuit and courts across the country, making it an inapposite point of reference here.

The starting point for this Court's analysis must be the Supreme Court's guidance. In *Alice*, the Supreme Court explained that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 573 U.S. at 222. Nor can patent claims be found eligible "because they were implemented on a computer," because "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id* at 223. "Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result." *Id.*

Just as *Alice* tells us that "a patent's recitation of a computer [that] amounts to a mere instruction to implement an abstract idea on a computer […] cannot impart patent eligibility," (*Alice,* 573 U.S. at 223), mere recitation of the words "technological" and "technical" are not enough. The Federal Circuit has explained and distinguished the critical aspect of the *Amdocs* holding in subsequent cases. For example, in one case the Federal Circuit noted that:

> [A]lthough the solution required generic components, it "necessarily require[d] that these generic components operate in an unconventional manner to achieve an improvement in computer functionality." . . . Like the claim in *Amdocs*, the claims [at issue] require generic computer components, but unlike the claim in *Amdocs*, they do not require those components to operate in an unconventional manner.

*People.ai, Inc. v. Clari Inc.*, No. 2022-1364, 2023 WL 2820794, at *14 (Fed. Cir. Apr. 7, 2023) (quoting *Amdocs*, 841 F.3d at 1300-01). Precisely the same is true here, because as shown above, the trusted computing base recited in the claims of the '705 patent operates in a  conventional

manner. District courts around the country have noted the same distinction where the patent claims at issue include "simply the identification of a generic component and not an inventive concept." *Synopsys, Inc. v. Avatar Integrated Sys., Inc.*, No. 20-cv-04151-WHO, 2020 WL 6684853, at *8 (N.D. Cal. Nov. 12, 2020); *see also Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:16-CV-00505-JRG, 2017 WL 10185856, at *5 (E.D. Tex. Oct. 24, 2017); *Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002, 1025 (N.D. Cal. 2017); *24/7 Customer, Inc. v. LivePerson, Inc.*, No. 15-cv-02897-JST, 2017 WL 2311272, at *10 (N.D. Cal. May 25, 2017). Because the claims of the '705 patent use conventional components for their well-understood purpose, the claims fail at Step 2 of the *Alice* test.

## VI.   CLAIM 19 OF THE '705 PATENT IS REPRESENTATIVE

The standard for determining representativeness of patent claims in the context of a § 101 motion is whether claims are "substantially similar and linked to the same abstract idea." *Content Extraction and Transmission LLC, v. Wells Fargo Bank,* 776 F.3d 1343, 1348 (Fed. Cir. 2020). K.Mizra argues that claim 19 of the '705 patent is not representative, but that argument is ineffective because it is premised on the same improper reading of the *Amdocs* case detailed above. K.Mizra attempts to carve out claims 4 and 14 of the '705 patent, which recite that "detecting an insecure condition includes configuring an operating system to quarantine the first host upon initial startup after installation of the operating system." Citing *Amdocs*, K.Mizra states "that specific ways of implementing even abstract ideas may be patentable." Resp. at 19. But as explained above, that is only true if the implementation claimed uses components unconventionally. The operating systems of claims 4 and 14 are entirely conventional, installing and configuring them is not unusual, and doing so to implement an abstract idea cannot impart patentability. These dependent claims have no impact on, or material difference as to, the § 101 analysis. The same is true for claims 5 and 6, which each recite, "detecting an outbound communication from the first host." There is nothing unconventional about "forwarding" (claim 5) or "redirecting" (claim 6) such communication, so the § 101 analysis is again identical for each.

## VII.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion and dismiss with prejudice K.Mizra's Complaint.

| | |
|---|---|
| Dated: July 8, 2025 | Respectfully submitted,<br><br>**DLA PIPER LLP (US)**<br><br>*/s/ Ardith Bronson*<br>Ardith Bronson, Esq.<br>Florida Bar Number: 423025<br>ardith.bronson@us.dlapiper.com<br>DLA Piper LLP (US)<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, Florida 33131<br>Telephone: (305) 423-8562<br><br>Michael G. Strapp, Esq.<br>Application to appear *pro hac vice* pending<br>michael.strapp@us.dlapiper.com<br>Safraz Ishmael, Esq.<br>Application to appear *pro hac vice* pending<br>safraz.ishmael@us.dlapiper.com<br>DLA Piper LLP (US)<br>33 Arch Street<br>26th Floor<br>Boston, Massachusetts 02110<br>Telephone: (617)406-6031<br><br>Ankur Desai, Esq.<br>Application to appear *pro hac vice* pending<br>ankur.desai@us.dlapiper.com<br>DLA Piper LLP (US)<br>500 Eighth Street, NW<br>Washington, D.C. 20004<br>Telephone: (202) 799-4716<br><br>*Counsel for Defendants Citrix System, Inc. and Cloud Software Group, Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2025, I electronically filed the foregoing document via CM/ECF, which caused a true and correct copy to be served electronically upon all entitled parties.

*/s/ Ardith Bronson*
Ardith Bronson, Esq.