UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-60803-WPD

K.MIZRA LLC,

    Plaintiff,

v.

CITRIX SYSTEMS, INC., and
CLOUD SOFTWARE GROUP, INC.,

    Defendants.

_____/

**PLAINTIFF K.MIZRA LLC'S SECOND MOTION TO STRIKE DEFENDANTS CITRIX SYSTEMS, INC.'S AND CLOUD SOFTWARE GROUP, INC.'S <u>AFFIRMATIVE DEFENSES 2 (IN PART), 3, AND 4</u>**

Plaintiff K.Mizra LLC ("Plaintiff" or "K.Mizra") hereby moves pursuant to Federal Rules of Civil Procedure 8, 12(f) and Local Rule 7.1, for an order striking Affirmative Defenses 3 and 4 in their entirety, and Affirmative Defense 2 in part as set forth in Defendants Citrix Systems, Inc.'s and Cloud Software Group, Inc.'s (collectively, "Defendants") Amended Answer and Affirmative Defenses to Plaintiff's Complaint (ECF No. 44 ("Amended Answer")). As grounds therefor, K.Mizra states:

**I.    INTRODUCTION**

This is Plaintiff's Second Motion to Strike Defendants' Affirmative Defenses. Plaintiff initially filed boilerplate affirmative defenses without any factual support. (ECF No. 37.) K.Mizra then filed its initial Motion to Strike. (ECF No. 40.)  In response, Defendants amended their affirmative defenses, removing certain defenses that even Defendants apparently admitted had no basis in fact or law and attempting to justify other dubious defenses in their Amended Answer. (ECF No. 44 at 38-50.) But Defendants' license-related defenses (Affirmative Defense 4) only

suggest that there **might** be a license that **might** provide a defense. *But see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . ."). Similarly, Defendants' equitable defenses (Affirmative Defense 3) only allege that Plaintiff attempted to discuss licensing with them but Defendants refused. Even if these facts were true, they are not enough to raise a plausible right to relief. Rather than forcing Plaintiff to deal with these defenses through discovery and then dispositive motion practice, they should be stricken now for failure to meet the required pleading standards of this Court.

**II.      LEGAL STANDARD**

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense." The Rule is intended to "avoid the expenditure of time and money that must arise from litigating spurious issues." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). As courts have recognized, assertion of factually unsupported affirmative defenses is an abuse of the litigation process: it forces plaintiff's counsel to serve interrogatories to ferret out the factual basis for each defense and, if there is no such basis, to either file a motion or persuade defense counsel to withdraw a defense that never should have been asserted. *Greenspan v. Platinum Healthcare Grp., LLC*, No. 2:20-cv-05874-JDW, 2021 U.S. Dist. LEXIS 48884, at *8 (E.D. Pa. Mar. 16, 2021).

While motions to strike are disfavored, "affirmative defenses are subject to the same pleading scrutiny imposed by Rule 8(a) and *Twombly/Iqbal*." *Meneses v. Pompano Beach Club Rec. Ctr., Inc.*, No. 0:24-cv-62377-WPD, 2025 U.S. Dist. LEXIS 83353, at *6 (S.D. Fla. Apr. 28, 2025) (internal citation omitted). An affirmative defense must therefore be pleaded with sufficient specificity "to give the opposing party fair notice of the [defense] and its grounds." *Id.* "Formulaic recitations filled with labels and conclusions without factual allegations are insufficient." *Id.*

(citing *Twombly*, 550 U.S. at 555). Instead, the pleading "must articulate enough facts to raise a plausible right to relief on the assumption that all of the non-conclusory, factual allegations in the complaint are true." *Meneses*, 2025 U.S. Dist. LEXIS 83353, at *6.

### III.   ARGUMENT

K.Mizra respectfully moves this Court to strike Defendants' Affirmative Defense numbers 3 and 4 in their entirety, and Affirmative Defense number 2 in part.

#### A.   Defendants' Second Affirmative Defense – Invalidity

##### 1.   Defendants' Invalidity Defense is Overinclusive

Although the Second Defense "includ[es]" a few specific sections of the patent statute, it improperly suggests by use of 35 U.S.C. §§ 101 *et seq.* (Aff. Def. ¶ 2),[1] that other, unidentified sections may also be relevant and asserted as affirmative defenses. *See Gen. Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 1:10-cv-3008-AT, 2011 U.S. Dist. LEXIS 135675, at *10 (N.D. Ga. Aug. 1, 2011) (striking "including but not limited to" because plaintiff was not on notice of any defense that would fall outside the scope of identified defenses). Although Plaintiff raised this issue in its previous Motion to Strike, Defendants chose not to address it in the Amended Answer. Plaintiff therefore requests that portions of paragraph 2 be stricken as follows to make clear that Defendants' invalidity defense is limited to only those bases that have been properly identified:

> One or more of the claims of the '705 patent are invalid for failure to ~~meet the conditions of patentability and/or otherwise~~ comply with ~~one or more provisions of 35 U.S.C. §§ 101 *et seq.*, including at least~~ 35 U.S.C. §§ 101, 102, 103, and 112.

However, this is not the end of the problems with Affirmative Defense No. 2.

---

[1] Defendants set forth their affirmative defenses in separately-numbered paragraphs on pages 38 through 50 of the Amended Answer. Citations to "Aff. Def." refer to these separately-numbered paragraphs.

3

### 2. Incorporation by Reference from Other Proceedings Should be Stricken

Plaintiff further requests that the Court strike paragraphs 3, 4, 7, and 8[2] for improper incorporation by reference. In each of these paragraphs, Defendants attempt to incorporate invalidity arguments by reference to pleadings or assertions in other cases or patent office proceedings. (Aff. Def. ¶¶ 3, 4, 7, 8.) But "courts have consistently ruled that such adoption is not permitted, even if the parties to the two civil actions are the same so that there is sufficient notice to all parties of what is contained in the adopted statements." 2 MOORE'S FEDERAL PRACTICE – CIVIL § 10.04[4]; *see also Handy v. Thomas E. MacKell, M.D. Ltd.*, No. 2:19-cv-02357-JHS, 2024 U.S. Dist. LEXIS 174031, at *10 (E.D. Pa. Aug. 29, 2024).

Indeed, other courts have found this practice to be "highly problematic, confusing, and inconvenient." *Spirit Lake Tribe v. Jaeger*, No. 1:18-cv-222, 2019 U.S. Dist. LEXIS 250837, at *12 (D.N.D. June 17, 2019). For example, it presents an incomplete record on appeal. *Id.* Similarly, "[i]t is difficult and impracticable to require [the opposing party], not to mention the Court and the public, to look to pleadings in another case to get a complete picture of the [Defendants'] allegations." *Id.* Those concerns are heightened here where the relevant statements or information may be identified in various documents which may not even be public.

Indeed, Defendants' pleading here is particularly problematic as it fails to provide the appropriate notice of the facts on which the invalidity defense is based. For example, paragraph 3 cites to, among other things, certain IPRs as providing a basis for its anticipation defense under 35 U.S.C. § 102. But none of the identified IPRs include any anticipation arguments (which require

---

[2] Paragraphs 5 and 9 similarly attempt to incorporate by reference IPRs filed by Defendants. (Aff. Def. ¶¶ 5, 9.) The specific sentences that reference the IPR should be stricken. However, because these paragraphs also separately identify specific references, Plaintiff does not seek to strike these paragraphs in their entirety.

every element to be disclosed in a single reference); rather, they only include obviousness arguments under 35 U.S.C. § 103 (which require every element to be disclosed in a combination of two or more references). As another example, Defendants' use of incorporation by reference here provides an avenue for Defendants to reserve their rights to add other invalidity arguments later. For example, Netskope Inc., a declaratory judgment plaintiff in a pending Northern District of California action, has not yet identified any invalidity arguments in that case. (Aff. Def. ¶ 3.) Defendants could therefore potentially insert additional invalidity arguments by providing them to Netskope and having them adopted into this case through paragraph 3 of these affirmative defenses and critically without having to show good cause that is required to amend pleadings. In yet another example, Defendants do not even purport to limit the allegations to the identified proceedings (*see, e.g.,* Aff. Def. ¶ 4 ("in any litigation . . . including at least . . . ")), meaning that it may also capture pleadings or assertions in unidentified proceedings.

### 3. Incorporation of Currently Non-Existent Documents Should be Stricken

Plaintiffs further request that Paragraphs 6 and 10 of Defendants' affirmative defenses be stricken. Both paragraphs seek to incorporate by reference "Defendants' forthcoming contentions in this case." (Aff. Def. ¶¶ 6, 10.) But there are no invalidity contentions in this case: they are not required by the Local Rules and are not in the scheduling order. (ECF No. 46.) And even if they were, it is improper to rely on contentions to meet pleading requirements. *See Optimum Imaging Techs. LLC v. Canon Inc.*, No. 2:19-CV-00246-JRG, 2020 U.S. Dist. LEXIS 257201, at *8 (E.D. Tex. May 1, 2020) ("[A] deficiency in [the Complaint] cannot be cured by a plaintiff's infringement contentions.").

Moreover, relying on *future* documents, such as expert reports, is improper, as it amounts to nothing more than a reservation of the right to rely on other theories later in the case as long as

they are included in such future documents. As this Court has explained: "[A]bsent a right to amend a pleading as a matter of course, amendment is a matter within the Court's discretion." *See Fifth Third Bank v. Lady Sara, Ltd.*, No. 0:17-cv-61345-DIMITROULEAS/SNOW, 2018 U.S. Dist. LEXIS 243371, at *8 (S.D. Fla. Feb. 14, 2018). Allowing a party to **reserve the right** to later specify the grounds for its affirmative defenses would provide an end-run around these well-established amendment requirements.

These paragraphs also attempt to incorporate by reference "any invalidity contentions or expert reports regarding the asserted patent or a family member served by K.Mizra by any party now or in the future." (Aff. Def. ¶¶ 6, 10.) This is improper for several reasons. First, it seeks to capture contentions or expert reports served in other cases, which is inappropriate for the reasons discussed above. (*See supra* Section III.A.2.) Second, it unambiguously seeks to reserve the right to amend the pleadings through documents "in the future," including service of expert reports in this case more than a year from now. (ECF No. 46; Fed. R. Civ. P. 26(a)(2).) As explained above, this is improper. *See also Hansen v. Nidea*, No. 4:24-cv-00949-RHH, 2024 U.S. Dist. LEXIS 226906, at *3 (E.D. Mo. Dec. 16, 2024) ("Defenses that come to light during discovery are not automatically incorporated into an answer, and a party cannot 'reserve the right' to amend its answer once an affirmative defense is discovered.").

B.   **Defendants' Third Affirmative Defense – Equitable Doctrines**

Defendants' Third Affirmative Defense alleges that Plaintiff's claims "are barred in whole or in part by the doctrines of waiver, estoppel, and acquiescence." (Aff. Def. ¶ 16.) However, Defendants have failed to plead sufficient facts to raise a plausible right to relief under any of these defenses.

1. **Factual Allegations**

Each of the equitable defenses is solely based on the following allegations: The asserted patent issued 13 years ago. (Aff. Def. ¶ 18.) Defendants' SPA solution was initially released around April 2022. (*Id.* ¶ 17.) Plaintiff "contacted Citrix in August 2022 in a letter addressing Citrix's potential infringement, but that letter made no reference to the asserted patent or to any alleged infringing product." (*Id.*) The next communication between the parties was "an April 2023 letter in which [Plaintiff] again made no reference to the asserted patent or to any alleged infringing product line and instead offered to licensed [sic] patents owned by a different entity." (*Id.*) The next communication was in January 2025. (*Id.*) Plaintiff then filed this action in April 2025. (*Id.*)

As will now see, these allegations, even if deemed true, do not support the claimed right to relief claimed by Defendants.

2. **Defendants Fail to Meet Pleading Standards for Waiver Defense**

Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 745 (1993). To properly plead waiver, Defendants were required to allege facts that would show (1) an existing right; (2) knowledge of the right; and (3) an actual intention to relinquish that right. *See, e.g., Sprint Communs. Co. v. Mediacom Communs. Corp.*, No. 17-1736-RGA, 2021 U.S. Dist. LEXIS 49059, at *6 (D. Del. Mar. 16, 2021). It has failed to sufficiently plead at least two of these elements.

First, Defendants fail to plead facts sufficient to show that K.Mizra had knowledge of any existing right. To the contrary, Defendants repeatedly state that K.Mizra's letters did not mention either Citrix's SPA product or the Asserted Patent. (Aff. Def. ¶ 17.) Second, Defendants fail to properly plead that K.Mizra had an actual intention to relinquish that right. In part, that is because there are no pleaded facts indicating that K.Mizra even had knowledge of the right, such that it

7

could have knowingly relinquished the right. But even assuming such knowledge, Defendants' allegations still fail.

Defendants do not allege that K.Mizra explicitly waived any rights. *But see Control Laser Corp. v. Smith*, 705 F. Supp. 3d 1006, 1016 (N.D. Cal. 2023) (noting that waiver "must be manifested by some overt act."). Instead, Defendants allege that Plaintiff waived its rights through "inaction." (Aff. Def. ¶ 18.) Defendants appear to argue that K.Mizra's silence between April 2023, when Defendants rebuffed Plaintiff's efforts to discuss licensing, and January 2025 constitutes waiver. But, silence alone does not give rise to waiver unless there is a duty to speak. For example, the Federal Circuit has found waiver based on silence, but only when that silence is coupled with a duty to speak that inherently exists when participating in a standard setting organization. *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1022 (Fed. Cir. 2008). This is consistent with how waiver is generally applied. *See, e.g., Hess v. Biomet, Inc.*, No. 3:16-cv-208 JD, 2022 U.S. Dist. LEXIS 113901, at *11–12 (N.D. Ind. June 28, 2022) ("[W]aiver requires an affirmative act and mere silence, acquiescence, or inactivity will not constitute waiver unless there is a duty to speak or act."). K.Mizra had no such duty, meaning Defendants' waiver defense must fail.

### 3. Defendants Fail to Properly Allege or Plead Their Estoppel Defense

Defendants apparently assert an equitable estoppel rather than other types of estoppel (e.g., legal estoppel) defenses. The estoppel defense should be stricken to the extent it purports to cover any other type of estoppel. *See Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004) (striking general reference to estoppel because it "does not specify . . . . whether it is asserting a single type of estoppel or several types of estoppel" and thus "does not provide fair notice" of the defense).

Defendants' equitable estoppel should also be stricken for failure to plead sufficient supporting facts. In the context of patent infringement, equitable estoppel requires a showing that (1) the patentee, through misleading conduct, led the infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement. *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010). Because misleading conduct is an element of this defense, it must be pleaded with particularity under Rule 9(b). *See Bayer Cropscience AG v. Dow AgroSciences* LLC, No. 10-145 RMB/JS, 2011 U.S. Dist. LEXIS 149636, at *7–8 (D. Del. Dec. 30, 2011). Defendants fail to adequately plead this defense under any standard.

      a.      ***No Misleading Conduct by Plaintiff***

Defendants fail to even suggest that Plaintiff undertook any misleading conduct. Again, Defendants' argument appears to be that Plaintiff's silence between April 2023 and January 2025 was somehow misleading. But the Federal Circuit has explained that the mere fact that "attempts to negotiate licenses were followed by a period of silence does not, in itself, constitute the necessary misleading conduct." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992). The allegations here provide nothing more. Indeed, to be misleading, "inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *A.C. Aukerman v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (overruled on other grounds); *see also Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1295 (Fed. Cir. 1992) (noting that other factors must indicate "the silence was sufficiently misleading as to amount to bad faith"). But the only other facts alleged here are that Plaintiff sent two letters to Defendants in 2022 to which

Defendants did not respond and which, according to Defendants, did not make any reference to the asserted patent or the accused product. (Aff. Def. ¶ 17.) Such acts, even if true, are legally insufficient to show misleading conduct by K.Mizra for at least three reasons. First, any inaction here was not attributable to K.Mizra. Rather, it was Defendants who failed to act by choosing not to engage in licensing discussions. *Hemstreet,* 972 F.2d at 1295. Second, Defendants fail to allege that they were even aware of the asserted patent prior to January 2025. *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, No. 01-1031, 2001 U.S. App. LEXIS 25113, at *28 (Fed. Cir. Aug. 22, 2001) (stating that for equitable estoppel, "the alleged infringer must have knowledge of the patentee and its patent") (citing *Aukerman*, 960 F.2d at 1042); *see also Seville Classics, Inc. v. Neatfreak Grp., Inc.*, No. CV 16-06460 SJO (RAOx), 2017 U.S. Dist. LEXIS 183029, at *14–15 (C.D. Cal. Feb. 14, 2017) (striking equitable estoppel defense where defendant was unaware of patent). And third, as Defendants explicitly allege, Plaintiff never mentioned the asserted patent. (Aff. Def. ¶ 17.) As such, "[t]here is simply no misleading conduct or silence by [the patent owner] to indicate that it did not intend to enforce" the never-mentioned patent. *Radio Sys. Corp. v. Tom Lalor & Bumper Boy, Inc.*, 709 F.3d 1124, 1131 (Fed. Cir. 2013); *see also Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 639, 642 (D. Del. 2004) ("CMT could not have been misled about Philips' intentions to enforce or not enforce Philips' patent rights, since CMT ha[d] no idea those rights existed.").

### b.   *No Reliance by Defendants*

Equitable estoppel also requires "actual reliance" by the Defendants. *Sunbeam Prods. v. Wing Shing Prods. (BVI) Ltd.*, 153 F. App'x 703, 710 (Fed. Cir. 2005). But Defendants' affirmative defenses are silent on this required element. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995) ("Infanti must show that it substantially relied on the misleading

10

conduct of Gasser in taking some action . . ."). Nor do Defendants allege facts that would tie the unidentified action to the alleged misleading conduct rather than, e.g., a "business decision to capitalize on a market opportunity," *Hemstreet*, 972 F.2d at 1294, or a belief that the '705 Patent is invalid for failing to claim patentable subject matter, *see, e.g., JLC-Tech LLC v. Luminos Glob., Inc.*, No. 25-cv-15-RSH-JLB, 2025 U.S. Dist. LEXIS 189608, at *15 (S.D. Cal. Sept. 24, 2025) (dismissing equitable estoppel counterclaim where conclusory allegation of reliance was unsupported and record showed strong belief in non-infringement position).

### c. *No Material Prejudice*

The final element of equitable estoppel is material prejudice to Defendants. *Aukerman*, 960 F.2d at 1043. Defendants have neither identified any prejudice nor explained how that prejudice was related to any allegedly misleading conduct of Plaintiff.

### 4. Defendants Fail to Properly Plead Their Acquiescence Defense

Defendants also fail to allege facts sufficient to support their acquiescence affirmative defense, which is also apparently based on "K.Mizra's inaction." (Aff. Def. ¶ 20.) But "[u]nder federal law, acquiescence requires an ***active*** representation of consent." *Sprint Communs. Co. L.P. v. Cequel Communs., LLC*, No. 18-1752-RGA, 2022 U.S. Dist. LEXIS 14903, at *8 (D. Del. Jan. 27, 2022) (emphasis added); *see also Microsoft Corp. v. Corel Corp.*, No. 5:15-cv-05836-EJD, 2017 U.S. Dist. LEXIS 208669, at *6 (N.D. Cal. Dec. 11, 2017) (noting that acquiescence requires "an affirmative grant of consent or permission"). Again, this is consistent with the general application of acquiescence in other intellectual property contexts. *See Buccellati Holding Italia Spa v. Laura Buccellati, LLC*, 5 F. Supp. 3d 1368, 1375 (S.D. Fla. 2014) ("Acquiescence [in a trademark case] requires active consent to the infringer's conduct."). As the *Sprint* court observed, "[t]he patentee's behavior must be more than misleading conduct, or else it would remove all

distinction between the doctrines of equitable estoppel and acquiescence." *Id.* (cleaned up). Defendants have not alleged that Plaintiff provided anything like an active representation of consent, meaning the acquiescence defense must be stricken. Moreover, even if acquiescence did not require active consent, it would still be insufficiently pleaded for the same reasons discussed above in connection with the waiver and estoppel defenses. K.Mizra could not have acquiesced to the alleged infringement when Defendants admit K.Mizra never raised either the asserted patent or the now-accused product.

      **C.**    **Defendants' Fourth Defenses Should Be Stricken**

Defendants' Fourth Affirmative Defendants alleges that Plaintiff's claims are barred "by the doctrine or patent exhaustion, license and/or implied license." (Aff. Def. ¶ 22.) To support these, Defendants make two factual allegations. First, they state that the allegations of infringement "will necessarily implicate products and services offered by third parties." (*Id.* ¶ 23.) The only products/services identified by Defendants are the alleged "trusted platform modules." (*Id.*) No specific third parties are identified. Second, Defendants state that "upon information and belief," the '705 Patent has been licensed to third parties. (*Id.*) No specific licenses or third parties are identified. These factual allegations, even if correct, are legally insufficient to support granting any of the three plead defenses.

          **1.**    **Defendants Fail to Properly Plead Literal License**

Defendants have failed to properly plead an express license defense at least because they fail to identify a license. Instead, Defendants only suggest that there ***might be*** a license that ***might be*** applicable here. These allegations do not meet the *Iqbal/Twombly* standard. *See Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 802 (C.D. Cal. 2016); *see also Sprint Communs. Co. L.P. v. Big River Tel. Co.*, LLC, No. 08-2046-JWL, 2008 U.S. Dist. LEXIS 68779,

at *4–5 (D. Kan. Sept. 8, 2008) ("the fact that [Plaintiff] has entered into license agreements in the past" is not enough to "support application of the defense in this case.").

### 2. Defendants Fail to Properly Plead Implied License

An implied license is "founded on the meeting of the minds which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." *Bitmanagement Software GmbH v. United States*, 989 F.3d 938, 953 (Fed. Cir. 2021). The general contracting requirements "are identical for both express and implied contracts." *Id.* In the context of patent infringement, an implied license requires (1) an existing relationship between the patentee and the infringer; (2) within that relationship the patentee transferred a right to use the patented invention to the patentee; (3) the right was transferred for valuable consideration; (4) the patentee has now denied the existence of the right; and (5) the patentee's statements and conduct created the impression that it consented to the accused infringer making, using, or selling the patented invention. *Mass Eng. Design, Inc. v. Ergotron, Inc*, 633 F. Supp. 2d 361, 388 (E.D. Tex. Apr. 17, 2009) (citing *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1579 (Fed. Cir. 1997)).

Here, Defendants' implied license theory is based solely on allegations that Plaintiff has granted express licenses to unknown third parties (Aff. Def. ¶ 23) and fails for several reasons. Initially, "[i]t is well-established that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." *Bitmanagement,* 989 F.3d at 949. Accordingly, Defendants' theory of implied contract explicitly based on an express contract with third parties fails as a matter of law.

13

And even if this theory was not legally barred, Defendants fail to plausibly plead implied license. The underlying allegations are purely speculative. Moreover, the mere existence of third-party licenses does not suggest there was any relationship between Plaintiff and Defendants, much less that any right was transferred "within that relationship." Indeed, Federal Circuit case law requires an "affirmative grant of consent or permission" for an implied license to legally exist. *Wang Labs.,* 103 F.3d at 1581. No such affirmative grant is here plead and, indeed none here exists. In fact, none of the alleged bases for this defense even involve Defendants. *See De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927) (noting that implied license requires action "exhibited *to another*, from which that other may properly infer that the owner consents to his use of the patent." (emphasis added)). Nor do Defendants allege any right was transferred for "valuable consideration."

Moreover, Defendants' allegations do not plausibly allege any "nexus between the patentee's purported waiver and the infringing action." *Winbond Elecs.,* 2001 U.S. App. LEXIS 25113 at *26.. Indeed, given that Defendants still cannot identify any license as here being relevant, it appears that Defendants are only hoping to find something they might use to argue implied license. But the Federal Circuit has previously rejected an implied license theory based on "third-party behavior about which the infringer was unaware at the time it acted to its detriment." *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 926 (Fed. Cir. 1984).

   **3. Defendants Fail to Properly Plead Exhaustion**

Exhaustion requires an authorized sale of the accused product. *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 636 (2008). Here, the only specific allegation of the affirmative defense relates to "trusted platform modules" ("TPM") (Aff. Def. ¶ 23), but Defendants do not identify who sold these modules or provide any factual allegations suggesting the sale was

14

authorized. Even if they had, and even if that fact was somehow relevant to infringement (which it is not), this defense still fails because exhaustion also requires that the thing that is sold "substantially embodies" the patented subject matter. *Quanta*, 553 U.S. at 638. Here, the TPM clearly does not embody the subject matter of the asserted claims. To establish that the TPM "substantially embodies" the '705 Patent, Defendants must plausibly allege that "the only reasonable and intended use of the article [,*i.e.*, the TPM,] is to practice the allegedly exhausted patent" and that "the article embodies the essential or inventive features of the allegedly exhausted patent." *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1046 (Fed. Cir. 2015) (citing *Quanta*, 553 U.S. at 631). The claims demonstrate that the TPM alone is not an embodiment of the essential or inventive features of the allegedly exhausted patent. Nor can Defendants plausibly allege that the only reasonable use of a TPM is to practice the '705 Patent. Indeed, Defendants assert that the claims are directed not to the TPM alone, but rather to "protecting a network from an infected host through contagion isolation and inoculation." (Aff. Def. ¶ 11.) And the allegation is incorporated by reference into the exhaustion defense. (Aff. Def. ¶ 21.) Thus, Defendants' affirmative defense dooms the defense.

**III.    CONCLUSION**

Plaintiff respectfully requests that this Court enter an Order striking Defendants' Affirmative Defenses 3 and 4 in their entirety, and Affirmative Defense 2 in part.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**

The undersigned counsel hereby certifies that, in compliance with Local Rule 7.1(a)(2) that undersigned counsel has conferred with counsel for Defendants in a good faith effort to resolve by agreement the issues raised as related to the Motion to Strike and the parties have been unable to resolve the issues raised herein.

Dated December 5, 2025

Respectfully Submitted,

*/s/ Gerald E. Greenberg*
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
ALESSANDRA M. SIBLESZ
Florida Bar No. 1024843
asiblesz@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com


ROBERT R. BRUNELLI *
CO State Bar No. 20070
rbrunelli@sheridanross.com
BRIAN S. BOERMAN *
CO State Bar No. 50834
bboerman@sheridanross.com
TRISTAN D. LEWIS *
CO State Bar No. 60968
tlewis@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
litigation@sheridanross.com

*\*Admitted pro hac vice*

*Counsel for Plaintiff K.Mizra LLC*