UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 25-cv-60803-WPD**

K.MIZRA LLC,

     Plaintiff,

v.

CITRIX SYSTEMS, INC., and
CLOUD SOFTWARE GROUP, INC.,

     Defendants.

_____/

**JOINT MOTION TO ENTER AGREED
ORDER REGARDING E-DISCOVERY**

In accordance with the Order Setting Trial Date and Discovery Deadlines (ECF No. 46), the Parties' Joint Discovery Plan and Scheduling Report (ECF No. 42), and the Court's Order Granting the Parties' Joint Motion for Extension of Time to file their proposed ESI Order (ECF No. 49), Plaintiff K.Mizra LLC and Defendants Citrix Systems, Inc. and Cloud Software Group, Inc. jointly move the Court to enter the proposed Order Regarding E-Discovery, attached hereto as **Exhibit A,** to the extent the Parties are in agreement, and provide guidance as to the disputed issues that still remain.

As directed by the Court and pursuant to Fed. R. Civ. P. 16 and 26, the Parties have met and conferred extensively and have reached substantial agreement on the terms of Order Regarding E-Discovery. However, despite these efforts, the Parties remain at an impasse on a limited number of issues that now require the Court's intervention. The proposed order attached hereto as **Exhibit A** sets forth both: (1) the provisions on which the Parties agree; and (2) the Parties' competing

proposals for the remaining disputes issues. A brief summary of the remaining disputes and each Party's positions regarding such disputed issues is provided below for the Court's convenience.

**I.     Dispute Regarding Defendants' Proposed "Good Cause" Requirement for Email Searches**

    **A.     Brief Summary of the Dispute**

The Parties disagree on whether an explanation of good cause needs to be submitted along with the specific email production requests. Specifically, in paragraph 6 of the proposed ESI Order, Defendants propose that a party propounding email discovery requests must "provide a written explanation of good cause along with its formal requests – e.g., because no other form of document production will provide sufficient evidence of a matter in dispute or requiring proof." Plaintiff opposes inclusion of this requirement.

    **B.     Plaintiff's Position**

"The purpose of an ESI protocol is to encourage reasonable electronic discovery with the goal of limiting the cost, burden and time spent, while ensuring that information subject to discovery is preserved and produced to allow for fair adjudication of the merits." *Leon v. Am. Honda Motor Co. Inc.*, No. 24-7872 HDV (PVCx), 2025 U.S. Dist. LEXIS 230037, at *7-8 (C.D. Cal. Nov. 7, 2025). The Parties have recognized that requiring searches of emails for every request would likely be unduly burdensome. Accordingly, the Parties have agreed to limits on the number of custodians and search terms in order to avoid such an undue burden while still allowing the Parties to pursue discovery needed for their claims and defenses.

Despite these efforts to avoid undue burden for email searches, Defendants propose requiring a party to explain good cause for each email search. But under the Federal Rules, a showing of good cause is needed only once the party resisting discovery has established undue burden. Fed. R. Civ. P. 26(b)(2)(B). Defendants essentially ask the Court to ignore all the work

2

the Parties have done to avoid undue burden and also presume that an undue burden exists without the producing Party having to make the required showing. Not surprisingly, Plaintiff was unable to find any case law where the Court imposed a "good cause" requirement to such requests. Indeed, imposition of a "good cause" standard makes the ESI protocol unnecessary; it is unclear why any requesting party would agree to initial limits on the scope of discovery if they were required to make the same showing as if they hadn't agreed to such limits.

### C. Defendants' Position

The issues to be litigated in this patent infringement action concern the purported infringement of one asserted patent, the invalidity of that same patent and damages, to the extent that Plaintiff prevails on its infringement claim and its patent is not found invalid. These issues will implicate discovery concerning the design and implementation of Defendants' accused product and financial information regarding Defendants' accused product. Information relevant to these core issues will be found in technical and financial documentation and source code, not emails. Further, Plaintiff has not made any other allegations or asserted any other claims that implicate email discovery. Given this context, Defendants' proposal in Paragraph 6 of the parties' proposed ESI Order is eminently reasonable. Defendants' proposal provides for email discovery where good cause exists, a proposal that strikes a reasonable balance between a party's request for email discovery and the significant burden imposed on the producing party.

Defendants' proposed approach to email discovery aligns with practices of other courts which do not permit email discovery in patent cases absent a showing of good cause. *See, e.g.*, Judge Albright's Standing Order Governing Proceedings (OGP) 4.4 – Patent Cases (Jan. 23,

2024)[1] at 3 ("As a preliminary matter, the Court will <u>not</u> require general search and production of email or other electronically stored information (ESI) related to email (such as metadata), <u>absent a showing of good cause</u>. If a party believes targeted email/ESI discovery is necessary, it shall propose a procedure identifying custodians and search terms it believes the opposing party should search.") (emphasis added); *Hoist Fitness Sys. v. TuffStuff Fitness Int'l, Inc.*, No. EDCV 17-1388-AB (KKx), 2019 U.S. Dist. LEXIS 2790, at *6, *10-11 (C.D. Cal. Jan. 7, 2019) ("Email discovery is not presumptively relevant to litigation. . . . Plaintiff has not attempted to explain what it hopes to uncover from Defendant's emails that have not been produced through other discovery methods. . . . Therefore, the Court cannot determine the likelihood that email discovery will provide relevant information or whether they will be substantially duplicative of previously produced documents.") (citing Fed. R. Civ. P. 26(b)).

**II.     Dispute Regarding Production of Emails Outside Agreed Search Parameters**

    **A.     Brief Summary of the Dispute**

The Parties disagree on the extent to which emails should be produced other than in accordance with the agreed search protocols.

In paragraph 6, Plaintiff proposes a statement that "although a party is under no obligation to search e-mail in response to general production requests that include ESI, a party may not withhold responsive e-mail of which it is aware based on this Order." Defendants oppose inclusion of this statement.

In paragraph 6, Defendants propose a statement that "any emails produced in any prior litigation involving the patents-in-suit and/or patents related to the patents-in-suit that are

---

[1] Available at https://www.txwd.uscourts.gov/wp-content/uploads/2023/01/Standing-Order-Governing-Proceedings-Patent-Cases-01232024.pdf

responsive to a specific email production request shall be produced." Plaintiff opposes inclusion of this statement.

### B. Plaintiff's Position

As a general matter, a party need not search for or produce emails outside of the agreed email search parameters. This general rule is intended to avoid undue burden. Plaintiff proposes a modest exception to this rule: that Parties may not withhold any responsive emails of which they are already aware in response to general production requests. Producing emails of which a party is already aware does not require review of emails to determine which ones might be responsive or impose any other type of undue burden. It is thus consistent with the goals of the ESI protocol and serves only to clarify that a party may not intentionally withhold known responsive information merely because it is an email.

Defendants propose a substantially broader exception that only burdens Plaintiff. Particularly, they propose that notwithstanding the Parties' agreement on limiting custodians and search terms, Plaintiff must also search through any emails produced in any other litigation involving the patents-in-suit and/or related patents to determine whether such emails are responsive. Because Defendants have not been involved in any prior litigation involving these or related patents, this effectively eviscerates the custodian and search term limits on Plaintiff but not Defendants. Such a proposal is fundamentally unfair. Moreover, it again undermines the goal of the ESI protocol in that it would impose a substantial undue burden on Plaintiff. Plaintiff would first need to gather all documents produced in up to 13 other litigations involving the asserted '705 Patent (to the extent those documents even exist), filter through all documents produced in those cases to identify emails, and then determine which of those emails are responsive to relevant requests. Placing such a burden on one party, and only one party, is improper and Defendants'

proposal should be rejected. Again, Plaintiff is unaware of any Court that has imposed such a one-sided discovery obligation. Indeed, this proposal is at least one of duplicative (to the extent that it seeks emails from the same K.Mizra custodians identified here), expansive (to the extent it allows Defendants to go around the custodian limits here), or highly problematic (to the extent it seeks emails from other parties in those other proceedings, given that Defendants' proposal is not limited only to emails produced by K.Mizra).

      C.      **Defendants' Position**

Plaintiff proposes in Paragraph 6 that "although a party is under no obligation to search e-mail in response to general production requests that include ESI, a party may not withhold responsive e-mail of which it is aware based on this Order." To be clear, Defendants agree that the parties should not be required to search email in response to general production requests. However, Defendants oppose Plaintiff's proposal that a party must produce "responsive e-mail of which it is aware" even if that email is not the subject of a specific email request. Plaintiff's proposal is vague, impractical, and unworkable. For example, it may invite disputes over what it means to be "aware" of an email. In practice, Plaintiff's proposal that a party may not withhold "email of which it is aware" could be read to obligate a party to produce any email within a party's possession, custody, or control, such as any emails of its employees, effectively converting general production requests into *de facto* requirements to search for and collect emails. By contrast, Defendants' proposal that "any emails produced in any prior litigation involving the patents-in-suit and/or patents related to the patents-in-suit that are responsive to a specific email production request shall be produced" provides a clear and administrable rule that avoids such line-drawing concerns as it obligates only the production of a limited set of previously produced emails that are responsive to a "specific email production request."

6

### III. Dispute Regarding Procedure for Identifying Email Custodians

#### A. Brief Summary of the Dispute

The Parties disagree on the procedure for identifying email custodians and email search terms. In paragraph 7, Plaintiff proposes a requirement that each party provide "a specific listing of email custodians" and a "specific identification of the ten most significant listed email custodians in view of the pleaded claims and defenses," after which "[e]ach requesting party may also propound up to five written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests." Defendants oppose inclusion of these provisions.

#### B. Plaintiff's Position

Plaintiff proposes an exchange of potential custodians and a limited number of discovery requests to help each party identify the appropriate custodians and search terms, rather than having the requesting party guess which custodians might have relevant information and what information they might have. First, each party will identify a set of email custodians most likely to have information about the claims and defenses in this action, since the party is in the best position to know which of its employees are likely to have responsive information. Without such information, Plaintiff would be required to guess which of Defendants' 9,000 or more employees might be good candidates. Then, to select the custodians and identify specific search terms, each requesting party would be able to seek discovery on who each employee is and what they might have in their emails. Alternatively, Plaintiff could forgo additional discovery if the producing party provided the types of information each custodian may have and potentially even proposed search terms without a discovery request. Again, without this type of information, it is unclear how Plaintiff could craft appropriate search terms for each selected custodian. Plaintiff's proposed procedure thus allows

the Parties to efficiently and effectively identify custodians and relevant search terms under the agreed email searching protocol. Indeed, this type of procedure is often adopted in ESI protocols. *See, e.g., Popovchak v. UnitedHealth Grp. Inc.*, No. 1:22-cv-10756-DEH, 2024 U.S. Dist. LEXIS 47899, at *3 (S.D.N.Y. Mar. 11, 2024) (requiring identification of custodians and the type of information under each custodian's control); *Smartwings v. Boeing Co.*, No. 2:21-cv-00918-RSM, 2021 U.S. Dist. LEXIS 214838, at *2-3 (W.D. Wash. Nov. 3, 2021) (same). And this specific proposal is adopted nearly verbatim from the model order for e-discovery in patent cases provided by the United States District Court for the Eastern District of Texas, except that Plaintiff proposes fewer custodians. *See* https://www.txed.uscourts.gov/sites/default/files/forms/E-Discovery_Patent_Order.pdf, at 7.

    **C.**    **Defendants' Position**

Plaintiff proposes that the parties provide "a specific listing of likely email custodians," and "a specific identification of the ten most significant listed email custodians." Additionally, Plaintiff proposes that each requesting party be permitted to serve five written discovery requests and take a deposition to determine potential email custodians and search terms for email discovery requests. These requirements are burdensome, unnecessary and would impose duties and obligations well beyond those set forth in the Federal Rules of Civil Procedure and this Court's Local Rules. For one, the parties are already obligated under Rule 26(a)(1) to disclose individuals likely to have discoverable information that they may use to support their claims or defenses and have exchanged this information. To the extent a party seeks additional information beyond the Initial Disclosures concerning likely document custodians, that party already has the option and the prerogative to serve written discovery requests seeking that information (with those written discovery requests counting toward the applicable written discovery limits). Plaintiff's proposal

for the provision of five additional written discovery requests targeted at potential email custodians coupled with a deposition to determine email custodians and search terms essentially amounts to an extra process concerning "discovery about discovery." To the extent Plaintiff is relying upon the Eastern District of Texas' model e-discovery order to support its proposal, such reliance would be unavailing, as that district is an outlier. Other jurisdictions that handle large volumes of patent cases (including the Western District of Texas, the District of Delaware, and the Northern District of California) do not provide for separate and additional meta-discovery, such as written discovery requests and depositions about email custodians and search terms.

Finally, Defendants note that Plaintiff's proposal is problematic for the additional reason that it suggests that numerical limits concerning its "meta-discovery" process should apply per party, not per side. While Defendants comprise two parties (Citrix Systems, Inc. and Cloud Software Group, Inc.), there is only a single plaintiff (K.Mizra). Thus, K.Mizra's proposal is an attempt by K.Mizra to gain twice as much "meta-discovery" about email as Defendants would be obligated to provide if K.Mizra's proposal were adopted. To be clear, it is Defendants' position that K.Mizra's "meta-discovery" proposal should be rejected in its entirety.

### IV.  Dispute Regarding Number of Email Custodians

#### A.  Brief Summary of the Dispute

The Parties disagree on the number of custodians for email searches. In paragraph 8, the Parties disagree on whether "the requesting Party shall limit its email production requests to a total of [eight or three] custodians per producing side."

#### B.  Plaintiff's Position

Plaintiff proposes that each side be permitted to search emails for up to 8 custodians of the other side. This limit applies collectively to both defendants in this action. Even if it applied to

each defendant individually, which it does not, this represents less than 1 out of every 1,000 employees for Citrix alone, who Plaintiff understands has more than 9,000 employees. Notably, this limit does not require Plaintiff to pursue email searches for 8 custodians; rather, it only allows Plaintiff to request up to that limit if needed without seeking relief from the Court. At this early stage in the case, it does not make sense to cap the possible email custodians at a lower number. Indeed, protective orders usually include an even greater number of potential custodians at the outset. *See, e.g., Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC (RMI), 2020 U.S. Dist. LEXIS 17250, at *8 (N.D. Cal. Jan. 31, 2020) (ordering ESI order to include 15 custodians for defendants); *FastVDO LLC v. AT&T Mobility LLC*, No. 16-cv-385-H-WVG, 2016 U.S. Dist. LEXIS 190546, at *5 (S.D. Cal. July 25, 2016) (ten custodians per producing party); *see also Huawei Techs. Co. v. Huang*, No. 4:17-CV-00893, 2018 U.S. Dist. LEXIS 136929, at *20-21 (E.D. Tex. Aug. 14, 2018)(ordering search of 16 custodians); Capitol *Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 54 (S.D.N.Y. 2009) (ordering search of 15 custodians). Nonetheless, to the extent that Defendants believe searches for a particular custodian are improper as the case progresses, the ESI order already includes a mechanism for Plaintiff to challenge it at the appropriate time.

There is no reason to provide a restrictive limit on potential email searches at this time, regardless of Defendants' position that email searches may not be particularly important here. That may be the case, but neither the Court nor Plaintiff can know that at this early stage in the case. The importance of email searches will vary based on, among other things, how Defendants use their email system (e.g., if they use to exchange documents which may not be stored or saved elsewhere), the bases for Defendants' defenses (which have not been fully identified), and other information that is unknown at this time. Indeed, Defendants' proposal of three custodians is unduly restrictive: Plaintiff has been unable to identify any ESI orders with such a low limit.

Indeed, the default in most jurisdictions appears to be around 10. *See, e.g.,* District of Delaware Default Standard for Discovery, including Discovery of Electronically Stored Information ("ESI"), available at https://www.ded.uscourts.gov/sites/ded/files/pages/Electronic%20Discovery%20Default%20Standard_0.pdf, at 3.a (requiring identification of 10 custodians). Indeed, Plaintiff's proposal is consistent with other default orders in patent cases. *See, e.g.,* Eastern District of Texas Model Order Regarding E-Discovery in Patent Cases, available at https://www.txed.uscourts.gov/sites/default/files/forms/E-Discovery_Patent_Order.pdf, at 8 (permitting 8 custodians).

### C. Defendants' Position

The parties are at an impasse regarding the number of email custodians. By way of background, Defendants initially proposed a limit of three custodians and Plaintiff proposed eight custodians. Plaintiff then offered to compromise at six custodians, while Defendants countered at four custodians.

As set forth in connection with Defendants' positions above, email discovery is not relevant to the core issues of infringement, invalidity and damages and will impose a substantial burden on the producing party. Given these facts, to the extent any email discovery is permitted, this discovery should be limited to a very small number of email custodians.

In sum, to the extent email discovery proceeds, it should be narrowly tailored, supported by good cause, and limited to preferably three, but no more than four, email custodians.

Dated: December 5, 2025

By: /s/ Gerald E. Greenberg
    GERALD E. GREENBERG
    Florida Bar No. 440094
    ggreenberg@gsgpa.com
    ALESSANDRA M. SIBLESZ
    Florida Bar No. 1024843
    asiblesz@gsgpa.com
    GELBER SCHACHTER &
    GREENBERG, P.A.
    One Southeast Third Avenue, Suite 2600
    Miami, Florida 33131
    Telephone: (305) 728-0950
    E-service: efilings@gsgpa.com

    ROBERT R. BRUNELLI*
    CO State Bar No. 20070
    rbrunelli@sheridanross.com
    BRIAN S. BOERMAN*
    CO State Bar No. 50834
    bboerman@sheridanross.com
    TRISTAN D. LEWIS*
    CO State Bar No. 60968
    tlewis@sheridanross.com
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, CO 80202
    Telephone: 303-863-9700
    litigation@sheridanross.com

*Admitted pro hac vice*

*Counsel for Plaintiff K.Mizra LLC*

Respectfully submitted,

By: /s/  Jose M. Espinosa
    ARDITH BRONSON
    Florida Bar No. 423025
    ardith.bronson@us.dlapiper.com
    JOSE M. ESPINOSA
    Florida Bar No. 1030890
    jose.espinosa@us.dlaiper.com
    DLA Piper LLP (US)
    200 South Biscayne Boulevard, Suite 2500
    Miami, Florida 33131
    Telephone: (305) 423-8562

*Counsel for Defendants Citrix Systems, Inc., and Cloud Software Group, Inc.*